"Plaintiffs’ quantum meruit claim for compensation for land transportation services rendered in excess of those specified in their contract with defendant is before this court on the parties’ stipulated facts. Because we believe that the Government’s requiring additional land transportation brings this case within the ambit of our holding[1] in Trans Ocean Van Service v. United States, 192 Ct.Cl. 75, 426 F.2d 329 (1970), we find that the plaintiffs are entitled to the additional compensation they claim.
*1076 "Plaintiffs agreed to provide land transportation on Code 5[2] household goods shipments moving between points in the Netherlands and Belgium and points in the United States. The ocean transportation was to be accomplished by defendant’s Military Sealift Command (MSC), which maintained ocean terminal facilities at six ports in the Netherlands and four ports in Belgium. Rather than utilize any of these ports, however, the defendant required plaintiffs to ship the goods to an MSC terminal in Bremerhaven, Germany, from whence they were shipped to the United States. By making these extended land shipments, plaintiffs incurred an additional cost which the parties have stipulated to be $20,322.64.
"Plaintiffs filed suit in this court to recover these charges, on a quantum meruit basis, relying largely upon our decision in the case of Trans Ocean Van Service v. United States, 192 Ct.Cl. 95, 426 F.2d 329 (1970). In that case we decided, among other things, that where the plaintiff was
. . . entitled to select the entire routing for the shipment . . . the performance by the plaintiff at the defendant’s request of . . . additional land transportation created an implied obligation on the part of the defendant to reimburse the plaintiff for the reasonable value of the extra service. 192 Ct.Cl. at 111, 426 F.2d at 348.
"Defendant responds with an assertion that plaintiff here, unlike the plaintiff in Trans Ocean, did not have full responsibility for routing and moving shipments from origin to destination. Defendant further argues that we should follow another portion of the Trans Ocean case which held that plaintiff was not entitled to a quantum meruit recovery where there was no evidence of any
. . . contractual provision or understanding pursuant to which the defendant, in connection with a Mode 5 shipment, agreed to utilize . . . the MSTS [now MSC] *1077 port nearest to the destination point. 192 Ct.Cl. at 109-10, 426 F.2d at 347.
"We agree with plaintiffs. Although the shipments here are characterized as 'Code 5 shipments,’ the parties .have stipulated that 'plaintiffs had full responsibility for routing and moving the shipments from origin to destination.’ Since the plaintiffs’ quoted rates were for shipments from points in Belgium and the Netherlands, and since the MSC operated facilities in both of those countries, it is understandable that plaintiffs expected to route the shipments through the nearest port, or at least through one of the numerous available ports in the lowlands. The Government’s subsequent requirement that the goods be transported overland to a point in Germany prior to ocean shipment renders this situation very similar to the one in Trans Ocean where we required the Government to pay additional compensation.
"The Government’s assertion that we should deal with these shipments just as the court in Trans Ocean dealt with 'Mode 5’ shipments is based on the rationale that 'no contractual provision or understanding existed’ which would allow plaintiffs to use the nearest port. When this assertion is distilled, it is merely a restatement of defendant’s first argument — that plaintiffs did not have responsibility for routing shipments — and must similarly fail as an attempt to contest a stipulated fact. We do not know what evidence the Trans Ocean court had before it concerning the Mode 5 shipments, but, based both on the stipulation of plaintiffs’ full responsibility for routing and on the nature and chronology of the agreement involved here, we believe it is fair to state that there existed an 'understanding’ that a nearer port would be used.
"If we were to accept defendant’s rationale as a basis for our decision, we would be affirming a procedure by which the Government could accept bids for shipments from points in Belgium and then order the carrier to transport the goods overland to Murmansk for shipment without offering additional compensation. Clearly such a procedure would be unacceptable.
"For these reasons, we agree with the plaintiffs that they are entitled to additional compensation in the stipulated *1078 amount of $20,322.64 for the additional overland transportation services required by the Government.
"it is hereby ordered, after consideration of the stipulated facts, briefs, and exhibits of the parties, and after oral argument, that judgment be entered for the plaintiffs in the amount of $20,322.64.”
On April 4, 1978 the court denied defendant’s motion for rehearing and relief from judgment.

 That part of Trans Ocean involving plaintiffs entitlement to select entire routing of shipments.

 Code 5 service, known as "Door-to-Door Container Surface-Government” involved the prepacking and loading of household goods into special containers owned by plaintiffs, and the transportation of these containers to a port of embarkation. The parties stipulated that "plaintiffs had full responsibility for routing and moving the shipments from origin to destination."