**YOSEMITE PARK and Curry Company**

v.

**The UNITED STATES.**

No. 375–75.

United States Court of Claims.

July 14, 1978.

Robert H. Thau, Beverly Hills, Cal., attorney of record, for plaintiff. Rosenfeld, Meyer & Susman, Beverly Hills, Cal., of counsel.

Bernard M. Brodsky, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant. Lars A. Hanslin, Dept. of Interior, Washington, D. C., of counsel.

Before DAVIS, KUNZIG, and BENNETT, Judges.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KUNZIG, Judge.

This action, arising from plaintiff's attempted recovery on a contract which defendant now contends is invalid and unenforceable under Government procurement law, is before the court on the parties' cross-motions for summary judgment. Although we agree with the defendant that a contract with terms such as the express written contract entered into by Yosemite Park and Curry Company (YPC or plaintiff) and the National Park Service (NPS) is rendered invalid as not in accordance with applicable Government procurement stat-

utes and regulations, we conclude that plaintiff did perform and defendant did knowingly receive the benefit of certain bargained-for and agreed-upon services and that plaintiff is, therefore, entitled to recover in *quantum meruit* the reasonable value of the services rendered. Because a determination of the reasonable value of the benefit received by defendant is subject to proof of facts and is not ascertainable from the record now before us, we must remand this case to our Trial Division for further proceedings in accordance with Rule 131(c)(2).

The contractual relationship between plaintiff and the defendant, operating through the NPS of the Department of the Interior, began in May of 1963, when they executed a concession contract pursuant to 16 U.S.C. § 3 (1976). Under the terms of this agreement, defendant granted to plaintiff the right to establish certain public facilities and accommodations, including lodging, food and beverage services, and other merchandising operations, in Yosemite National Park, with plaintiff establishing reasonable rates and prices for its goods and services.

This contract also authorized the concessioner (plaintiff) to provide a transportation service within the Park, with fees to be paid by the public but subject to a review for reasonableness by the Secretary of the Interior. Various transportation services, including a shuttle bus, were begun by YPC under this contract.

On March 26, 1971, however, the Park transportation service was modified when the parties entered into a *Memorandum of Agreement for the Furnishing of a Transportation System at Yosemite National Park* (the Agreement). This Agreement arose, at least partially, from the successful experiment which YPC had conducted, beginning in February of 1970, in an effort to ease the ever increasing pollution and congestion in the Park, by operating its shuttle bus service without charge to the public. The NPS then decided, in July of 1970, to ban private automobiles from the Park. The Agreement was the natural outgrowth of this move toward overall public transportation in the Park.

Under the terms of the Agreement, plaintiff agreed to provide bus service to the public without charge and defendant agreed to reimburse YPC for its actual expenses plus a reasonable profit for providing this service.[1] Addendum Number Two to the Agreement provided that plaintiff was able to recover federal income taxes as a reimbursable fixed cost and that plaintiff's annual operating fee was to be calculated as 12½ percent of its average gross investment in the transportation equipment employed in the service.

The form of the Agreement and its Addenda were selected and authorized by the NPS and all papers were drafted, approved and signed by a representative of the NPS. In addition, each document recited that it was entered into pursuant and subject to the original Concession Contract.

Plaintiff contends, and defendant does not contest (1) that defendant's first two audits, under the Agreement,[2] dated August 1971 and August 1972, approved all costs and payments and made no objection to the validity of the Agreement or to any of the terms or provisions thereof; (2) that YPC invested, based on the required performance and expected income of the Agreement, over $459,000 in transportation equipment during fiscal year 1972, and spent many weeks formalizing optimum equipment, design, fuel, routes and schedules with NPS representatives; (3) that the audit for fiscal year 1973, in which the terms of the Agreement were first ques-

1. There was some dispute between the parties as to whether the Government recovered its expenses from the admission fees charged to those persons visiting the Park, or whether the Government was forced to employ appropriated funds. Nothing in the record resolves this dispute.

2. The term "Agreement" will hereinafter be used to refer to both the "Agreement" and its Addenda.

tioned, was subject to an unexplained "inordinate delay" at the hands of the Government of over 18 months while YPC continued to perform under the Agreement in expectation of complete reimbursement according to its terms; and (4) that, in approving the acquisition of YPC by MCA, Inc., in June of 1973, the NPS at no time questioned the validity of any of the contracts under which YPC was operating.

Finally, in letters dated June 2 and June 4, 1975, the NPS informed YPC that it would not pay plaintiff's invoices but, instead, would offset these charges against allegedly improper payments previously made by the Government. The NPS audit had determined that treating federal income taxes as reimbursable fixed costs and allowing more than 10 percent of the cost of the contract on a "cost-plus" contract violated federal procurement statutes and regulations.

Plaintiff, alleging that NPS now owes plaintiff $481,257.89, plus interest, on account of past transportation services rendered pursuant to the Agreement, has filed this action in an effort to recover those sums on which defendant has refused payment.

Defendant, in its motion for summary judgment, asserts that the plaintiff may not recover under the terms of the Agreement because those terms are not within the allowable guidelines established for federal procurement contracts by applicable statutes and regulations. Defendant relies particularly on 41 U.S.C. § 254(b) (1970)[3] in contesting the 12½ percent allowance and on the federal procurement regulations, 41 C.F.R. § 1–15.205–41(a)(1) (1977),[4] in arguing that YPC's federal income tax payments should not be reimbursable.

The Government notes that the relevant procurement statute makes it mandatory for executive agencies to follow the above-cited regulations in purchasing property or services, except in certain very limited circumstances,[5] and reasons that the provi-

---

**3.** This statute states, in pertinent part:

§ 254. Negotiated contracts

\* \* \* \* \* \*

(b) Barred contracts; fee limitation; determination of use: advance notification

The cost-plus-a-percentage-of-cost system of contracting shall not be used, and in the case of a cost-plus-a-fixed-fee contract the fee shall not exceed 10 per centum of the estimated cost of the contract, exclusive of the fee, as determined by the agency head at the time of entering into such contract (except that a fee not in excess of 15 per centum of such estimated cost is authorized in any such contract for experimental, developmental, or research work and that a fee inclusive of the contractor's costs and not in excess of 6 per centum of the estimated cost, exclusive of fees, as determined by the agency head at the time of entering into the contract, of the project to which such fee is applicable is authorized in contracts for architectural or engineering services relating to any public works or utility project). Neither a cost nor a cost-plus-a-fixed-fee contract nor an incentive-type contract shall be used unless the agency head determines that such method of contracting is likely to be less costly than other methods or that it is impractical to secure property or services of the kind or quality required without the use of a cost or cost-plus-a-fixed-fee contract or an incentive-type contract.

. . .

\* \* \* \* \* \*

This statute has been incorporated in the federal procurement regulations. 41 C.F.R. § 1–3.-405–5(c)(2) (1977).

**4.** This regulation states:

§ 1–15.205–41(a)(1) Taxes.

(a) Taxes are charges levied by Federal, State, or local governments. They do not include fines and penalties except as otherwise provided herein. In general, taxes (including State and local income taxes, except as provided in paragraph (a–1) of this § 1–15.205–41), which the contractor is required to pay and which are paid or accrued in accordance with generally accepted accounting principles are allowable, except for:

(1) Federal income and excess profits taxes;

\* \* \* \* \* \*

**5.** 41 U.S.C. § 252 (1970) states, in pertinent part:

§ 252. Purchases and contracts for property.

(a) Applicability of chapter; delegation of authority

Executive agencies shall make purchases and contracts for property and services in accordance with the provisions of this chapter and implementing regulations of the Administrator; but this chapter does not apply—

(1) to the Department of Defense, the Coast Guard, and the National Aeronautics and Space Administration; or

(2) when this chapter is made inapplicable pursuant to section 474 of Title 40 or any other law, but when this chapter is made inapplicable

sions which violate procurement statutes and regulations must be held unenforceable as a matter of law, *citing Whiteside v. United States*, 93 U.S. 247, 23 L.Ed. 882 (1876) and *G. L. Christian & Associates v. United States*, 312 F.2d 418, 160 Ct.Cl. 1, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963).

Defendant anticipates the position of plaintiff by arguing that the Secretary of the Interior's general concession authority, delineated in 16 U.S.C. §§ 3, 17b, 20b(a)–(b) (1976) [6] does not except the Agreement from the ambit of the procurement statutes and regulations. Nowhere in any of these sections, asserts defendant, is statutory language sufficiently explicit to render the generally effective procurement law "inapplicable pursuant to . . . any other law" within the meaning of 41 U.S.C. § 252(a)(2) (1970). In fact, the defendant continues, the explicit statement in § 17b, that the Secretary shall not be bound by *"section 5 of title 41"* (emphasis added)

would appear to imply he is bound, as would be any Government procurement officer, by the other sections of that title, and that the very fact that 16 U.S.C. § 3 specifically permits the Secretary of the Interior authority to enter into section 3 contracts "without advertising and without competitive bids" *implies* that other statutory requirements are applicable to concession contracts if they, in effect, serve to purchase goods or services.

Plaintiff counters with the argument that both the original contract and the Agreement were executed under the Secretary's broad concession authority and that, as concession contracts, these agreements were exempt from the restrictions of general procurement law.

Alternatively, plaintiffs contends that, even if the Agreement does fall within the ambit of general procurement law, the defendant has not shown that the Agreement, in fact, violates the statutes and regulations

by any such provision of law, sections 5 and 8 of this title shall be applicable in the absence of authority conferred by statute to procure without advertising or without regard to said section 5 of this title.

\* \* \* \* \* \*

**6.** These sections provide, in pertinent part:
§ 3. Rules and regulations of national parks, reservations, and monuments; timber; leases
The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of the parks, monuments, and reservations under the jurisdiction of the National Park Service . . . . He may also grant privileges, leases, and permits for the use of land for the accommodation of visitors in the various parks, monuments, or other reservations herein provided for, but for periods not exceeding thirty years . . . . .
§ 17b. Services or other accommodations for public; contracts; rates
The Secretary of the Interior is authorized to contract for services or other accommodations provided in the national parks and national monuments for the public under contract with the Department of the Interior, as may be required in the administration of the National Park Service, at rates approved by him for the furnishing of such services or accommodations to the Government and without compliance with the provisions of section 5 of title 41.
§ 20b. Protection of concessioner's investment

(a) Contract terms; compensation for loss of investment
Without limitation of the foregoing, the Secretary may include in contracts for the providing of facilities and services such terms and conditions as, in his judgment, are required to assure the concessioner of adequate protection against loss of investment in structures, fixtures, improvements, equipment, supplies, and other tangible property provided by him for the purposes of the contract (but not against loss of anticipated profits) resulting from discretionary acts, policies, or decisions of the Secretary occurring after the contract has become effective under which acts, policies, or decisions the concessioner's authority to conduct some or all of his authorized operations under the contract ceases or his structures, fixtures, and improvements, or any of them, are required to be transferred to another party or to be abandoned, removed, or demolished. Such terms and conditions may include an obligation of the United States to compensate the concessioner for loss of investment, as aforesaid.
(b) Profit commensurate with capital invested and obligations assumed
The Secretary shall exercise his authority in a manner consistent with a reasonable opportunity for the concessioner to realize a profit on his operation as a whole commensurate with the capital invested and the obligations assumed.

cited by the Government. YPC argues that the Agreement involved *experimental* transportation schemes and should, therefore, have been subject to the alternate 15 percent limitation on research and development cost-plus contracts rather than the normal 10 percent limit, adding that the Government has not even demonstrated to the court that reimbursement to the plaintiff exceeded 10 percent of the *cost of the contract* (since the face of the Agreement called for reimbursement of 12½ percent on *plaintiff's investment* and the two percentages are not immediately comparable). YPC also contends that, since the regulation prohibiting federal income tax reimbursement was subject to deviation, the plaintiff was entitled to rely on the Government's approval of the Agreement in its first two audits in believing that the NPS had followed proper deviation procedures (*see* note 10, *infra*).

Additionally, plaintiff adds to its repertoire the argument that the Government should be estopped now to assert the invalidity of the Agreement under which the parties operated successfully for two years and under which the Government allowed the plaintiff to operate, with expectation of full reimbursement, for almost two years after first questions had arisen. YPC contends (1) that it signed the Agreement reluctantly—only after insistent urging by NPS—and then proceeded to invest over $664,000 in transportation equipment; (2) that the Government was paid and accepted the required concession fees and accepted the full benefits of the Agreement for more than four years; and (3) that the Government continually encouraged plaintiff to perform under the Agreement and to *increase its gross investment* in transportation equipment. Plaintiff reasons that basic notions of fairness require that defendant be equitably estopped to change its position concerning the contract's validity.

Finally,[7] YPC contends that, even if this court should now accept the Government's

recently asserted position that the express written contract between the parties is invalid insofar as its provisions violate applicable procurement law, plaintiff should nevertheless be allowed to recover the reasonable value of the services it rendered to the Government on a *quantum meruit* theory. Ordinary principles of equity and justice, urges plaintiff, preclude the Government from retaining and accepting services and benefits while at the same time refusing to pay for them on the ground that the Agreement pursuant to which the benefits were conferred was invalid because it was unauthorized, did not follow proper form, or for some other reason.

Defendant, of course, takes a dim view of plaintiff's arguments. It first points to plaintiff's failure to demonstrate that the NPS contracting officer had the authority to enter into anything other than a procurement contract.

Defendant further notes that nothing in either the contract or the Agreement indicates that either was in any way an experimental or developmental contract which would arguably entitle YPC to a 15 percent, rather than a 10 percent, return. Even if the Agreement were an experimental contract, continues the Government, it would not justify the inclusion of federal income taxes as reimbursable fixed costs. Plaintiff's attempted "deviation" argument provides no more justification for such inclusion, since no deviation was sought or approved for the contract in question.

The Government responds to plaintiff's "percentage of contract cost versus percentage of gross investment" argument by asserting that the auditors found that the dollar figure representing 12½ percent of YPC's gross investment was actually in excess of 10 percent of estimated contract cost and, thus, violated the applicable statute and regulation. Defendant admits that such would not always be the case, but strongly contends that the combination of circumstances here yielded such a result.

7. Plaintiff's numerous additional subarguments have been considered but, because they have little bearing on our disposition of the case, they will not be explicitly discussed in this opinion.

On the issue of the Government's being estopped now to deny the validity of the Agreement, defendant submits that the doctrine of equitable estoppel is inapplicable where, as here, a Government officer executes a patently illegal contract, the limitations on the contracting officer's authority were published in the Federal Register, plaintiff is deemed to have knowledge thereof, and the responsible Government officials are under an actual duty to retain monies which would be in excess of legally allowable payments.

Finally, the Government urges that plaintiff should not be entitled to *quantum meruit* recovery in excess of the legally allowable amount on grounds that such a resolution would reach the exact result prohibited by statute and regulation.

■ While we agree with the Government that the admittedly broad concession granting authority of the Secretary of the Interior did not relieve the NPS of the duty of complying with generally applicable procurement statutes and implementing regulations in contracting with YPC for transportation services, we hold that plaintiff should be entitled to recover the reasonable value of the services which it rendered to the Government and for which the Government accepted full benefits for over four years, and, therefore, remand this case to the Trial Division for a determination of the reasonable value of those services.

■ Any consideration of this problem must begin with the maxim that the United States is not bound by its agents acting beyond their authority and contrary to regulation. *See Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Porter v. United States,* 496 F.2d 583, 590, 204 Ct.Cl. 355, 366 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). "One who purports to contract with the United States assumes the risk that the official with whom he deals is clothed with actual authority to enter the contract alleged," *Haight v. United States,* 538 F.2d 346, 209 Ct.Cl. 698, *cert. denied,* 429 U.S. 841, 97 S.Ct. 116, 50 L.Ed.2d 110 (1976), and the United States

will not be estopped to deny the acts of its agents who have acted beyond the scope of their actual authority. *Putnam Mills Corp. v. United States,* 479 F.2d 1334, 1338, 202 Ct.Cl. 1, 9 (1973); *California-Pacific Util. Co. v. United States,* 194 Ct.Cl. 703, 720 (1971).

With this line of reasoning established, it becomes evident that this case turns on the question of whether the broad power of the Secretary of the Interior to grant concessions in the course of administering National Parks relieves him, and through him the NPS, from compliance with the generally acceptable procurement guidelines.

We begin, as did the Government, with 41 U.S.C. § 252(a), which states unequivocally that executive agencies *shall* make all purchases of goods and services in compliance with the procurement statutes and implementing regulations—including those specifically discussed *supra*—except where those statutes and regulations are "made inapplicable pursuant to . . . any other law." Plaintiff's most substantial argument centers on the contention that the Secretary of the Interior's concession authority constitutes that other law. However, after a careful reading of the statutory sections relied upon by plaintiff, and after a careful balancing of the arguments put forward by both of the parties, we are not convinced that the NPS (even though acting under the authority of the Secretary of the Interior) can avoid normal, legally mandated, procurement procedures, simply by characterizing the procurement of transportation services for the public as the granting of a "concession" to a specific contractor.

The most serious problem encountered in plaintiff's asserted rationale is that nowhere in the statutory language cited to us by the plaintiff is there any indication that Congress intended for the Secretary of the Interior to forego the requirements of either 41 C.F.R. § 1–15.205–41(a)(1) (1977) (pertaining to the non-reimbursable nature of federal income taxes) or 41 U.S.C. § 254(b) (1970) and 41 C.F.R. § 1–3.405–5(c)(2) (1977) (pertaining to the 10 percent

limit on cost-plus-a-fixed-fee reimbursements). Indeed, quite the contrary is the case. As noted by the defendant, Congress proved itself able explicitly to limit the applicability of certain parts of the procurement laws by providing that, in certain circumstances, the Secretary would forego normally required advertising and competitive bidding. Since Congress did not so much as mention any of the other procurement requirements, the natural implication must be that the legislature did not intend those other sections and implementing regulations to be limited.[8]

To emphasize this point, it should be noted that there is no language in the cited sections of title 16 which is in any way inconsistent with the operations of the applicable procurement laws. The section particularly relied upon by plaintiff for the proposition that the Secretary could contract for "services . . . for the public . . . *at rates approved by him . .*" (emphasis added) likewise does not preclude coincident coverage by procurement laws. Congress, deemed to have knowledge of its own statutory framework, could only have meant that the Secretary is free to set his own rates, so long as they did not exceed the statutory maximum. Similarly, nothing in the Secretary's grant of authority in any way contradicts the language or the applicability of the regulation prohibiting reimbursement for federal income taxes.

For these reasons, we can only conclude that Congress intended for the NPS, like all other executive agencies, to be bound by the procurement laws in the purchase of services, be they transportation services or some other variety, from a private contractor, whether that contractor is otherwise a "concessioner" or not. There is simply no basis for a conclusion that title 16 contains the "other law" necessary to render inapplicable the federal tax or 10 percent limitation provisions of normal procurement procedures.[9]

Having determined that this contract for the purchase of transportation services between the NPS and YPC is within the purview of normal procurement statutes and implementing regulations, we are met with plaintiff's argument that defendant has not shown the Agreement now in issue to be in violation of those procurement laws.

■ YPC's "deviation" argument pertaining to the federal income tax reimbursement provision is so weak as to be nearly frivolous. The deviation procedures provided for the Department of the Interior in 41 C.F.R. § 14–1.009–2 [10] were clearly *not* followed by the officers contracting with YPC and, without the approval required by that regulation, the officers lacked actual authority to deviate from Federal Procurement Regulations (FPR). Plaintiff's assertion concerning justified reliance to the contrary notwithstanding, a party contracting

8. This being the case, plaintiff's attempted distinction between a "concession" contract and a "procurement" contract would appear to be of little import, since the concession authority is contained in the same title 16 and the Agreement here in issue clearly involved the purchase of transportation services by the Government. Such a purchase falls within the ambit of § 252(a); plaintiff's attempted argument that a "concession" purchase is somehow different from a normal purchase because a concession contract "benefits the public" should also be accorded little weight. It is hoped that *every* Government purchase "benefits the public" in some way.

9. Plaintiff's argument that Congress created this "other law" and ratified the Agreement by appropriating funds for the specified NPS use is fallacious since nothing demonstrates Congress was apprised of the special terms of the Agreement, and Congress must be presumed to have intended that the money would be lawfully expended.

10. This regulation reads:
Deviations from FPR and IPR shall be kept to a minimum and controlled as follows:
(a) Deviations in both individual cases and classes of cases must be approved in advance by the Assistant Secretary—Policy, Budget and Administration. Requests for approval of such deviations shall be submitted by the heads of Bureaus and Offices to the Assistant Secretary—Policy, Budget and Administration. The requests shall cite the specific part of FPR or IPR from which it is desired to deviate, shall set forth the nature of the deviations, and shall give the reasons for the action requested.
41 C.F.R. § 14–1.009–2 (1977).

with the United States assumes the risk that the official with whom he deals is clothed with the actual authority to enter the subject contract sought to be enforced. *Jackson v. United States,* 573 F.2d 1189, 1197, 216 Ct.Cl. ——, —— (1978). Thus, the allowance of federal income taxes as a reimbursable fixed cost is clearly in violation of procurement law and is, therefore, an invalid, unenforceable provision of the Agreement.

Plaintiff's additional assertion, that the contract either was not a "cost-plus-a-fixed-fee" contract or was not comparable to the normal "cost-plus-a-fixed fee" contract where the fixed fee is measured as a percentage of the "estimated cost of the contract," presents a more subtle problem.[11] While we agree with the defendant that the contract, as structured, falls within the definition of a "cost-plus-a-fixed-fee" contract provided in the federal regulations,[12] we can also understand plaintiff's position that it is really not comparable to a normal contract where the fixed fee is figured as a percentage of "estimated contract costs." Here, the fee was figured as a percentage of "average gross investment" in the equipment necessary to perform the contract, with, apparently, no allowance whatsoever for such costs as fuel, operation, or maintenance of that equipment.[13] We cannot say, from the record now before us, why such a contract (purporting to allow, also, reimbursement for federal income taxes) was drafted. We are mindful, however, of the auditors' finding that the dollar amount of the fee involved here did, in fact, exceed 10 percent of the "estimated cost of the contract." Also of interest here is the representation by plaintiff that, had the parties been aware of the illegality of certain provisions of the contract, it could have been drawn in several other ways so as to provide reasonable compensation in a legally acceptable fashion.

The obvious problem with the substance of the contract now before this court is that the parties attempted to combine two distinct functions, (1) the procurement of transportation equipment and (2) the actual daily operation of that equipment, and to provide for payment only through a 12½ percent allowance on equipment costs and, essentially, a credit on plaintiff's income taxes.

■■ While it is clear that the Government may not now be estopped to deny the validity of the provisions in the express, written contract which are in violation of the FPR, *see, e. g., Putnam Mills Corp. v. United States, supra,* and while it is clear that the Government could no longer be bound by these terms of the Agreement, it is equally clear that the Government bargained for, agreed to pay for, and received the benefit of YPC's services as both an owner and an operator of the transportation equipment in question over the four-year period that YPC operated under the belief and on the representation of the NPS that the Agreement was valid. For this reason, we hold that plaintiff is entitled to a *quantum meruit* recovery for the reasonable value of the services received by defendant. *Clark v. United States,* 95 U.S. 539, 24 L.Ed. 518 (1877); *Allstates Van Lines Corp. v. United States,* No. 444–75 (Ct.Cl. Order entered Feb. 17, 1978).

11. Plaintiff's attempt to escape the 10 percent limit on cost-plus contracts by arguing that it should receive the 15 percent allowed on "experimental" contracts fails because, as defendant notes, nothing in the Agreement qualifies it as being experimental or developmental. Indeed, the Agreement was not signed until the "experimental" stage of bus transportation at no cost to the public had been completed.

12. See 41 C.F.R. § 1–3.405–5(a) (1977), which states in pertinent part:

The cost-plus-a-fixed-fee contract is a cost reimbursement type of contract which provides for the payment of a fixed fee to the contractor. The fixed fee once negotiated does not vary with actual cost . . . . .

13. Parenthetically, it would appear that, since the defendant was continually urging plaintiff to *increase* the investment upon which the fee was based, the NPS certainly did not believe that it was being overcharged for the services it was receiving from YPC. It is also noteworthy that plaintiff initially refused to sign this contract drafted and offered by the NPS on grounds that higher compensation was required.

■ Although the facts discussed above, including YPC's original hesitancy to enter into the contract and the NPS' continual urging for action which would have increased the price of performance, are initial indications that the price was, indeed, reasonable, we agree with defendant that the reasonable value of the benefit received by the NPS is a question of fact which is subject to further proof and which may be shown to be less than the amount claimed.[14] For this reason, we are remanding this action to the Trial Division for further proceedings pursuant to Rule 131(c)(2).

■ In determining the amount which plaintiff is entitled to recover, the Trial Judge is instructed that we do not deem the Government to have assented to payment of more than 10 percent of the *total costs of YPC's performance of the contract* nor to reimbursement of federal income taxes, since such assent would have been patently illegal, *see e. g., W. Penn. Horological Inst., Inc. v. United States*, 146 Ct.Cl. 540 (1959). The amount of plaintiff's· recovery is to be limited accordingly. However, we do determine that plaintiff is to recover the value of services rendered *both* in providing the equipment (*i. e.*, the costs of ownership, including a reasonable return on money invested in the equipment, fixed costs, etc.) and in operating that equipment (maintenance, fuel, wages, etc.), and that, to the extent the value of plaintiff's service does not exceed the *entire, total, provable costs* YPC incurred in performance of the Agreement, plus 10 percent, plaintiff should be able to recover the full reasonable value of these services rendered.

For all the reasons discussed above, we hold that plaintiff is not entitled to enforcement of the provisions of the express, written contract at issue here since those provisions are invalid as violative of the applicable procurement law. We also hold, however, that plaintiff is entitled to recover as *quantum meruit* the reasonable value of the services (as limited above) which it rendered to NPS over the time period in question.

Accordingly, after a thorough consideration of all submissions of the parties, and after oral argument, defendant's motion for summary judgment is denied, plaintiff's cross-motion for summary judgment is denied, and this action is remanded to the Trial Division for further proceedings in accordance with the above opinion.

---

**14.** Plaintiff's cite to the case of *New York Mail and Newspaper Transp. Co. v. United States*, 154 F.Supp. 271, 139 Ct.Cl. 751, *cert. denied*, 355 U.S. 904, 78 S.Ct. 332, 2 L.Ed.2d 260 (1957) is inapposite. The *New York Mail* case came to this court only after a full trial and finding of fact by our Trial Division. We were, therefore, able to render the final decision in the *New York Mail* case that we are unable immediately to render in the case at hand.