John DOE, Plaintiff,

v.

UNITED STATES, Defendant.

No. 99–188C.

United States Court of Federal Claims.

Nov. 15, 2000.[1]

---

1. This opinion was issued under seal on November 15, 2000. The parties were instructed to identify protected material subject to redaction. Proposed redactions, as well as several additional redactions, were adopted by the court and implemented below. This redacted version is issued January 9, 2001.

C.R. Kit Bramblett, Bramblett & Bramblett, P.C., El Paso, Texas, attorney of record for the plaintiff. Woodrow W. Bean II, El Paso, Texas, of counsel.

James C. Caine, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C., with whom were Kathryn A. Bleecker, Assistant Director, David M. Cohen, Director, and David W. Ogden, Acting Assistant Attorney General, attorneys of record for the defendant. Douglas A. Kash, Office of Domestic Operations, Drug Enforcement Administration, of counsel.

## OPINION

HORN, Judge.

This case comes before the court on the defendant's motion for summary judgment, pursuant to Rule 56(c) of the Rules of the United States Court of Federal Claims

(RCFC). The defendant contends that the court should grant summary judgment in favor of the defendant because there are no genuine issues of material fact in dispute, and the defendant is entitled to judgment as a matter of law based on the absence of an enforceable contract. The plaintiff brings this action against the defendant for breach of contract, and for failure to compensate him, allegedly for in excess of $600,000.00, for services he rendered in three separate investigations, pursuant to a Drug Enforcement Administration (DEA) Cooperation Agreement, DEA Form 473, which the plaintiff signed on June 10, 1998. The plaintiff claims that the June 10, 1998 Cooperation Agreement is an enforceable contract that entitles him to compensation for his services. The defendant does not dispute the existence of the June 10, 1998 Cooperation Agreement, but argues that the Cooperation Agreement is not an enforceable contract, as "none of the agents with whom [the plaintiff] had contact were contracting officers, possessed contracting authority, or have ever been delegated authority to enter into contracts upon behalf of the United States." The defendant makes a similar absence of authority argument regarding possible ratification of the Cooperation Agreement. The defendant also asserts that under the terms of the Cooperation Agreement, "the DEA has complete discretion regarding whether to compensate Mr. Doe for his services as a confidential informant."

2. In his complaint, the plaintiff has not claimed for recovery under the Asset Forfeiture Fund, pursuant to 28 U.S.C. § 524(c). Nonetheless, because the form used by DEA agents to recommend that the plaintiff receive an award is DEA Form 499—Request for Payment Under 28 U.S.C. § 524(c), the court notes that 28 U.S.C. § 524(c) has been found not to be a money-mandating statute, because "the language of 524(c) is discretionary, and the statute neither enumerates any specific requirements nor stipulates a sum certain." *Hoch v. United States*, 33 Fed.Cl. 39, 45 (1995); *Khairallah v. United States*, 43 Fed.Cl. 57, 62 (1999).

3. The appendix enclosed with the defendant's motion for summary judgment contains copies of selected pages from two separate DEA Agent's Manuals. The DEA Agent's Manual that appears first in the appendix (DEA Agent's Manual A) is dated September 10, 1998, and includes pages

## FINDINGS OF FACT

According to the defendant, private citizens referred to as "confidential informants" are used by DEA to supply information or provide assistance in DEA investigations. Confidential informants can receive monetary compensation under two different schemes. Confidential informants can be paid from a general appropriations fund available for that purpose, or can receive an award from the Asset Forfeiture Fund administered by the Attorney General, pursuant to 28 U.S.C. § 524(c)(2) (1998).[2]

With respect to payments from the general appropriations fund, according to section 6612.61(D) of DEA Agent's Manual A,[3] payments less than _____ may be approved by the immediate supervisor of a field agent; payments between _____ and _____ may only be approved by an authorized senior field manager, GS–1811–15, or higher; and a single payment in excess of _____ requires the additional approval of the Special Agent in Charge or Country Attache, and the Chief of Domestic Operations or the Chief of International Operations, as appropriate. Similarly, with respect to payments from the general appropriations fund, according to section 6612.43(B) of DEA Agent's Manual B, the Special Agent in Charge or Country Attache is authorized to approve payments up to _____. Payments beyond _____ from the general appropriations fund must be approved by the Deputy Assistant Administrator for Operations.

that pertain to Chapter 66 ENFORCEMENT PROCEDURES, Subchapter 661 INFORMATION SOURCES, 6612 CONFIDENTIAL SOURCES. The DEA Agent's Manual that appears second in the appendix (DEA Agent's Manual B) is not dated, and includes pages that similarly pertain to Chapter 66 ENFORCEMENT PROCEDURES, Subchapter 661 SOURCES OF INFORMATION, 6612 INFORMANTS. According to the parties' recent joint submission requested by the court, DEA Agent's Manual B is dated February 1988, and was effective until September 10, 1998, at which time DEA Agent's Manual A became effective. DEA Agent's Manual B controlled DEA agent's actions at the time the plaintiff signed the June 10, 1998 Cooperation Agreement. DEA Agent's Manual A controlled DEA agent's actions at the time DEA agents considered recommending the plaintiff for an award.

With respect to payments from the Asset Forfeiture Fund, Section 6612.67(1) of DEA Agent's Manual A, states as follows:

CSs [Confidential Sources] have no inherent "entitlement" to receive payment from the AFF [Asset Forfeiture Fund], regardless of the extent of, or fruits of their cooperation. The final decision as to whether and how much to pay a CS from the AFF rests with Headquarters, and will depend on the availability of funds at the time the application is processed, as well as other factors.

Similarly, Section 6612.44(C)(2) of DEA Agent's Manual B, concerning payments from the Asset Forfeiture Fund, states: "Offices must not promise any awards in any amount to an individual. The statutory authority [28 U.S.C. § 524(c) ] provides that the payment of such awards is purely discretionary." Moreover, according to DEA Agent's Manual B, the authority to grant[4] an award of less than _____ from the Asset Forfeiture Fund was delegated to and was within the discretion of the Deputy Assistant Administrator for Operations of DEA. Pursuant to 28 U.S.C. § 524(c)(2), the authority to approve an Asset Forfeiture Fund award of $250,000.00 or more was delegated by the Attorney General only to the DEA Administrator, and could not be redelegated.

The plaintiff signed a first Cooperation Agreement on April 2, 1997. A Cooperation Agreement, DEA Form 473, is a form that outlines the conditions confidential informants agree to follow when furnishing information and assistance to the DEA. DEA Special Agents Noel Dano and John Moring witnessed the plaintiff's signature on the first Cooperation Agreement by signing their names under the words: "witnessed by." The plaintiff was a confidential informant for DEA under this Cooperation Agreement until his deactivation on January 15, 1998. A

DEA Report of Investigation signed by DEA Special Agent Jill Ceren states that the plaintiff was deactivated due to lack of any new intelligence or investigations.

On June 10, 1998, however, the plaintiff signed a second Cooperation Agreement, similar to the first agreement described above, as a confidential informant for DEA. DEA Special Agents Jesse Garcia and Jill Ceren witnessed the plaintiff's signature on the June 10, 1998 Cooperation Agreement by signing their names under the words: "witnessed by." In pertinent part, paragraph 8 of the June 10, 1998 Cooperation Agreement states: "The amount of any payments paid to me by DEA for my cooperation shall be at the discretion of DEA, and no sum certain can be guaranteed by any officer or employee thereof." During the period covered by the June 10, 1998 Cooperation Agreement, the plaintiff participated in the criminal investigations of Gerardo Tejeda–Robledo, Ricardo Ramos, and Alberto Nunez.

The plaintiff claims that he is owed in excess of $600,000.00 for his participation in these three investigations. In deposition testimony, he described the monies owed to him as "between 10 and 25 percent of moneys, dope, people and property seized, automobiles seized.... [T]hey didn't give me a specific number, they just told me it would be anywhere from 10 to 25 percent of everything added up."[5] The plaintiff claims that DEA Special Agents Jesse Garcia and Rich Dobrich made promises to him which entitle him to payment for his services as a confidential informant. The plaintiff also claims that the June 10, 1998 Cooperation Agreement is an enforceable contract "because it tells me what I can and can't do." The plaintiff concedes that he had no agreement of any kind with any DEA representative

---

**4.** All payments from the Asset Forfeiture Fund are handled in accordance with 28 U.S.C. § 524(c), addressing authorization of payment, which, among other provisions, allows the Attorney General broad discretion to authorize payments for information leading to a civil or criminal forfeiture. Moreover, the Attorney General may exempt the procurement of contract services under the Asset Forfeiture Fund from provisions of law, as necessary, to warrant confidentiality

and security of related criminal investigations. 28 U.S.C. § 524(c)(1).

**5.** On the DEA Form 499–Request for Payment Under 28 U.S.C. § 542(c) contained in the record of this case, the DEA agents recommended that the plaintiff receive 12.5 percent of the value of property, seizures, and forfeitures in connection with the Gerardo Tejeda–Robledo investigation.

outside of the DEA field office in El Paso, Texas.

In connection with the Gerardo Tejeda–Robledo criminal investigation, the plaintiff provided information to DEA which led to the arrest of Gerardo Tejeda–Robledo on November 12, 1998, the seizure of approximately 76 pounds of amphetamine, and the seizure of approximately $1,216,920.00 of illicit cash. Gerardo Tejeda–Robledo also paid the plaintiff $6,000.00 in transportation fees, which the plaintiff turned over to the DEA. In addition, a 1998 Chevrolet Tahoe valued at $29,650.00, a 1992 Camaro valued at $5,000.00, and a 1985 Pontiac Fiero valued at $1,000.00 were seized in the investigation.

In connection with the Ricardo Ramos investigation, the plaintiff provided information to DEA which led to the arrest of Ricardo Ramos on January 25, 1999, and the seizure of approximately 300 pounds of marijuana. In connection with the Alberto Nunez investigation, the plaintiff provided information to DEA which led to the arrest of Alberto Nunez on February 13, 1999, and the seizure of approximately 1,234 pounds of marijuana.

On February 19, 1999, DEA Special Agents Garcia and Dobrich met with the plaintiff. DEA Special Agent Garcia asked the plaintiff if he would be willing to submit to a polygraph examination to disprove the allegation that the plaintiff had received $5,000.00 from Alberto Nunez. DEA Special Agent Garcia informed the plaintiff that his unwillingness to take a polygraph examination would force DEA Special Agent Garcia to deactivate him. The plaintiff did not take a polygraph examination and was deactivated on or about March 4, 1999.

On December 15, 1998, DEA Special Agent Garcia had recommended the plaintiff for an award, in the amount of 12.5 percent of the value of property, seizures, and forfeitures, in connection with the Gerardo Tejeda–Robledo investigation. According to the joint stipulations submitted by the parties, however, "due to the circumstances surrounding plaintiff's 'unsatisfactory/unlawful' conduct [involving an allegation that the plaintiff had received $5,000.00 from Alberto Nunez, and that the plaintiff had refused to undergo a polygraph examination], this recommendation was withdrawn."

## DISCUSSION

Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of RCFC is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that, in order for a motion for summary judgment to be granted, the moving party must demonstrate that the moving party is entitled to judgment as a matter of law, and that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Avenal v. United States*, 100 F.3d 933, 936 (Fed.Cir.1996), *reh'g denied* (1997); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lane Bryant, Inc. v. United States*, 35 F.3d 1570 (Fed.Cir.1994). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgment is appropriate when the sole dispute concerns the interpretation of a government contract, a ques-

tion of law. *See Olympus Corp. v. United States*, 98 F.3d 1314, 1316 (Fed.Cir.1996).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed. Cir.1998), *reh'g denied* (1998); *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied* (1995); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence, such as affidavits, depositions, answers to interrogatories and admissions. *Id.* In the present case, the court finds no material issues of fact. Therefore, the case is ripe for consideration of the defendant's motion for summary judgment.

The disputed issues in the instant case are as follows: (1) whether the agents with whom the plaintiff allegedly contracted possessed express actual authority to bind the defendant; (2) whether the DEA agents with whom the plaintiff allegedly contracted possessed implied actual authority to bind the defendant; (3) whether any representative of the DEA with the requisite authority to obligate funds approved or ratified the alleged agreement between the plaintiff and the DEA agents; (4) whether the defendant is equitably estopped from denying that the DEA agents had authority to contract with the plaintiff, and from denying the existence of a contract between the plaintiff and the defendant; and (5) whether the express and absolute discretion to make or refuse award payments to the plaintiff vested in DEA in paragraph 8 of the June 10, 1998 Cooperation

Agreement precludes the plaintiff from claiming a contractual entitlement to an award payment.

To recover under a contract with the United States government, the plaintiff must show mutuality of intent, consideration, and lack of ambiguity in offer and acceptance. *Fincke v. United States,* 230 Ct.Cl. 233, 675 F.2d 289, 295 (1982); *see also City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990), *cert. denied,* 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). In addition, the plaintiff must show that the government agent whose conduct was relied upon had actual authority to bind the government in contract. *City of El Centro v. United States,* 922 F.2d at 820; *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir. 1989), *amended on reh'g* (1989); *Mil–Spec Contractors, Inc. v. United States,* 835 F.2d 865, 867 (Fed.Cir.1987); *S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1, 4 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The United States Supreme Court has stated:

> [A]nyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The plaintiff bears the burden of proof with respect to the government agent's authority to enter into a contract on behalf of the government. *City of El Centro v. United States,* 922 F.2d at 821; *Kania v. United States,* 227 Ct.Cl. 458, 465, 650 F.2d 264, 268, *cert. de-*

*nied,* 454 U.S. 895, 102 S.Ct. 393, 70 L.Ed.2d 210 (1981); *Howard v. United States,* 31 Fed.Cl. 297, 312 (1994). "Absent actual authority on the part of the Government's agent to bind the Government in contract, no binding contract can exist, regardless of the agent's representations." *John Doe v. United States,* 100 F.3d 1576, 1584 (Fed.Cir.1996), *reh'g denied* (1997). The requisite actual authority can be express or implied. *H. Landau & Co. v. United States,* 886 F.2d at 324.

"Government employees have express actual authority to bind the government in contract when such authority is unambiguously granted by the Constitution, a regulation, or a statute." *Confidential Informant v. United States,* 46 Fed.Cl. 1, 7 (2000); *see also Roy v. United States,* 38 Fed.Cl. 184, 188 (1997). The plaintiff has not identified any statute or regulation which grants express actual authority to DEA Special Agents Garcia, Ceren, and Dobrich, nor has the plaintiff supplied any documentation of authorized delegations to those agents. The defendant, however, has identified regulations requiring that contracting authority must be specifically delegated, and has provided evidence that DEA Special Agents Garcia, Ceren, and Dobrich had not been delegated such contracting authority. According to the declaration of Ms. Christinia Sisk, the Deputy Assistant Administrator for the Office of Acquisition Management of DEA, who supervises all contract and small purchase activities at DEA, neither she nor her predecessor executed a delegation of procurement authority, pursuant to Title 48 C.F.R. §§ 1.601, 1.602–1, 2801.601, 2801.603–3 (1998) (relating to contracting authority within the United States Department of Justice), as is required for a DEA employee to enter into a binding contract on behalf of DEA. In her declaration, Ms. Sisk states that, during the period of 1998 through 1999, DEA Special Agents Garcia, Ceren, and Dobrich were not granted delegations of procurement authority.[6] The DEA Special Agents

---

**6.** In a recent filing, the plaintiff objected to the statement in Ms. Sisk's declaration that the authority of certain DEA employees "does not constitute a delegation of authority to contract on behalf of the United States," as a legal conclusion. The court, however, has reached its own legal conclusions and has considered only the factual portions of Ms. Sisk's declaration.

the plaintiff had contact with, thus, did not have the requisite contracting authority to enter into a binding contract with the plaintiff. The plaintiff has failed to offer any evidence to the contrary.

Furthermore, DEA internal procedures also support the defendant's position that DEA Special Agents Garcia, Ceren, and Dobrich had no authority to approve payments to confidential informants such as the plaintiff. With respect to payments from the general appropriations fund, section 6612.61(D)[7] of DEA Agent's Manual A states:

1. Payments less than _____ need not be checked against CY [calendar year] and LT [lifetime] CAP balances and may be approved by the immediate supervisor.

2. Payments between _____ and _____ may only be approved by an authorized senior field manager; GS–1811–15, or higher....

3. A single payment in excess of _____ will require the additional approval of the SAC [Special Agent in Charge] or CA [Country Attache] and DO [Chief of Domestic Operations] or OF [Chief of International Operations], as appropriate.

Similarly, according to section 6612.43(B) of DEA Agent's Manual B, concerning payments from the general appropriations fund, the Special Agent in Charge or Country Attache is authorized to approve payments up to _____ per informant per quarter. Payments beyond _____ from the general appropriations fund must be approved by the Deputy Assistant Administrator for Operations.

With respect to payments from the Asset Forfeiture Fund, Section 6612.67(1) of DEA Agent's Manual A expressly prohibits DEA agents from making specific commitments to confidential informants regarding payments, and vests the decision as to whether and how much to pay the informants with DEA Headquarters. DEA agents only can recommend that an award be made to a confidential informant. According to DEA Agent's Manual B, the authority to grant an award of less

than _____ from the Asset Forfeiture Fund was delegated to and within the discretion of the Deputy Assistant Administrator for Operations of DEA. Pursuant to the statute, 28 U.S.C. § 524(c), the authority to approve an award of $250,000.00 or more from the Asset Forfeiture Fund was delegated by the Attorney General to the DEA Administrator, and could not be redelegated. In addition, section 6612.44(C)(2) of DEA Agent's Manual B states that DEA "[o]ffices should not promise any award in any amount to an individual. The statutory authority [28 U.S.C. § 524(c) ] provides that the payment of such awards is purely discretionary." In this case, the plaintiff has not offered any evidence to establish that DEA Special Agents Garcia, Ceren, and Dobrich did not have express actual authority to enter into a binding contract with the plaintiff.

■■■■ "Although apparent authority will not suffice to hold the government bound by the acts of its agents, implied actual authority, like expressed [sic] actual authority, will suffice." *H. Landau & Co. v. United States,* 886 F.2d at 324 (citation omitted). "Authority to bind the [g]overnment is generally implied when such authority is considered to be an integral part of the duties assigned to a [g]overnment employee." *Id.* Based on alleged past dealings with him and with other informants, the plaintiff argues that the DEA agents' implied authority to enter into binding contracts on behalf of the government is an integral part of the duties assigned to the agents. Because DEA needs informants and informants expect to get paid, the plaintiff argues, it is necessary for DEA agents to enter into such contracts to get the informants to cooperate with DEA. The plaintiff's argument, however, fails. Several judges of this court have found that contracting authority is not an integral part of the duties assigned to DEA agents. *Khairallah v. United States,* 43 Fed.Cl. 57, 63–64 (1999) (granting summary judgment motion in favor of DEA in a breach of contract action filed by a confidential informant for payment arising

7. The quoted language in section 6612.61 is taken from a part of DEA Agent's Manual A which is unlabeled as to the source of funds. However, later in the same manual A, at section 6612.67, a

caption appears ("Payment from the Asset Forfeiture Fund"), which suggests it should be differentiated from the earlier section on funds from general appropriations.

from his assistance in a drug investigation, holding that contracting authority is not integral to DEA agents' duties; therefore, DEA agents did not have implied actual authority to enter into a contract with the plaintiff); *Cruz–Pagan v. United States*, 35 Fed.Cl. 59, 61–62 (1996). This court agrees.

In *Cruz–Pagan v. United States*, the court granted DEA's summary judgment motion against an informant who filed a claim seeking to enforce an alleged contract under which DEA agents allegedly agreed to pay him 25 percent of the value of any property seized and forfeited as a result of his assistance in a drug investigation. *Cruz–Pagan v. United States*, 35 Fed.Cl. at 59–60. In *Cruz–Pagan v. United States*, DEA agents had recommended that the plaintiff receive an award for his assistance, but later withdrew the recommendation, as the plaintiff was found to have violated the law. *Id.* Like the plaintiff in the case before this court, in *Cruz–Pagan v. United States* the plaintiff had asserted that contracting authority was an integral part of the duties assigned to DEA agents. The court in *Cruz–Pagan v. United States* rejected the plaintiff's argument, explaining that:

> [B]ecause reasonably efficient alternatives appear to exist to create the desired expectation of compensation, it would not be necessary or essential for DEA to grant contracting authority to its field agents in order to enable the agents to carry out their assigned duties of maintaining contact and exercising control over informants. Hence, the prerequisites set forth in *Landau* for implied actual authority do not exist.

*Id.* at 61–62.

In the instant case, and in numerous other cases, DEA has consistently taken the firm position that contracting authority is not an integral part of DEA agent's duties and that DEA agents lack the requisite authority to bind the government in contract. *See, e.g.*, *Salles v. United States*, 156 F.3d 1383, 1384 (Fed.Cir.1998) (affirming summary judgment in favor of the DEA in a breach of contract

action filed by a confidential informant for payment of a percentage of value of seizures and forfeitures arising from her cooperation with DEA); *Henke v. United States*, 43 Fed. Cl. 15, 24 (1999); *Khairallah v. United States*, 43 Fed.Cl. at 60; *Cruz–Pagan v. United States*, 35 Fed.Cl. at 60; *Hoch v. United States*, 31 Fed.Cl. 111, 113 (1994), *and dismissed*, 33 Fed.Cl. 39 (1995).

Additionally, in *Salles v. United States*, the United States Court of Appeals for the Federal Circuit stated that, "[t]o the extent rewarding informants was an 'integral part' of the duties of the [DEA] officials, they were limited by the Comprehensive Forfeiture Act of 1984, Pub.L. No. 98–473, codified at 28 U.S.C. § 524(c), which does not authorize payment promises providing for a percentage of all seizures, as alleged." *Salles v. United States*, 156 F.3d at 1384.[8] Moreover, as discussed above, DEA's internal procedures expressly preclude DEA agents from exercising contractual authority; thus, it would be inconsistent with DEA's internal regulations for the court to imply contracting authority to DEA agents. Therefore, consistent with the above discussion, the court finds that DEA Special Agents Garcia, Ceren, and Dobrich did not possess implied actual authority to enter into a binding contract with the plaintiff.

 The plaintiff also appears to suggest that, even if DEA agents lacked the authority to contractually bind the government, higher DEA officials ratified the June 10, 1998 Cooperation Agreement. "Agreements made by government agents without authority to bind the government may be subsequently ratified by those with authority if the ratifying officials have actual or constructive knowledge of the unauthorized acts." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1433 (Fed. Cir.1998), *reh'g denied* (1998), *cert. denied*, 525 U.S. 1177, 119 S.Ct. 1111, 143 L.Ed.2d 107 (1999). Ratification requires that a superior official "have authority to ratify, knowledge of a subordinate's unauthorized act, and then must confirm, adopt, or acquiesce to the

---

**8.** The court notes, however, that according to DEA Agent's Manual B, section 6612.43(A), from the general appropriations fund, "_____."

unauthorized action of his subordinate." *California Sand & Gravel, Inc. v. United States*, 22 Cl.Ct. 19, 27–28 (1990), *aff'd*, 937 F.2d 624 (Fed.Cir.1991), *cert. denied*, 502 U.S. 1057, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992); *United States v. Beebe*, 180 U.S. 343, 354, 21 S.Ct. 371, 45 L.Ed. 563 (1901). "[R]atification can only be based upon [an official's] full knowledge of all the facts upon which the unauthorized action was taken." *United States v. Beebe*, 180 U.S. at 354, 21 S.Ct. 371; *see also California Sand & Gravel, Inc. v. United States*, 22 Cl.Ct. at 27–28. "[S]ilence cannot be a ratification of a unilateral contract." *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d at 1433. "Ratification thus requires not only that there be some conduct or inaction constituting acquiescence, but that the acquiescence must be knowing." *Henke v. United States*, 43 Fed.Cl. at 27.

 The plaintiff has offered no evidence to prove that a supervisory official with contracting authority knew that DEA Special Agents Garcia, Ceren, or Dobrich entered into a binding contract with the plaintiff without authorization, and that the supervisory official subsequently acquiesced to such an unauthorized act by his or her subordinate agents. As previously discussed, according to DEA agency procedures governing payments to confidential informants from the general appropriations fund, payments in excess of _____ require approval of the Special Agent in Charge or Country Attache and the Chief of Domestic Operations or Chief of International Operations. According to DEA agency procedures governing payments from the Asset Forfeiture Fund, the authority to grant an award of less than _____ was delegated to and within the discretion of the Deputy Assistant Administrator for Operations of DEA. The authority to approve an award of $250,000.00 or more from the Asset Forfeiture Fund was delegated by the Attorney General to the DEA Administrator, and could not be redelegated.

Furthermore, the plaintiff has conceded that he had no agreement with any DEA representative outside of the DEA office in El Paso, Texas. Nor has the plaintiff offered any evidence showing contact between the plaintiff and the Chief of Domestic Operations, Chief of International Operations, Deputy Assistant Administrator for Operations, or the DEA Administrator, the only DEA representatives with contracting authority to approve awards at the level at issue, or any evidence showing that any of these officers were aware of the plaintiff's expectation to be paid, and that they acquiesced to the same.

The plaintiff argues that the government "had a custom of allowing its agents to enter [into] contracts . . ." shown by the past dealings of the DEA with the plaintiff, his father, and other confidential informants. The plaintiff's argument fails because the "plaintiff's prior experience with the DEA is not sufficient as proof with respect to the contract at issue." *Henke v. United States*, 43 Fed.Cl. at 27. Although the plaintiff has asserted that a dispute exists as to whether the government ratified the agreements DEA agents allegedly entered into with the plaintiff, he has offered no evidence to refute the declaration submitted by Ms. Christinia Sisk, the Deputy Assistant Administrator for the Office of Acquisition Management of DEA, who supervises all contract and small purchase activities within DEA, on behalf of the defendant. In her declaration, Ms. Sisk denies that anyone at DEA with whom the plaintiff had contact had authority to contract on behalf of the government. Mere assertions that a factual dispute exists are not sufficient to avoid summary judgment. *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 1404 (Fed.Cir.1984). Accordingly, there are no genuine issues of material fact in dispute with respect to the ratification of the plaintiff's alleged contract with DEA, and the plaintiff has failed to establish that ratification occurred.

 The plaintiff also argues that the defendant is estopped from denying the existence of an enforceable contract with the plaintiff and from denying that DEA agents had authority to contract with the plaintiff. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Cmty. Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). The courts may use this doctrine to prevent a "defendant from deny-

ing the existence of a contractual agreement." *Emeco Indus., Inc. v. United States,* 202 Ct.Cl. 1006, 485 F.2d 652, 657 (1973). A possibility exists that a party can assert an equitable estoppel claim against the United States government under limited circumstances. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 421, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), *reh'g denied,* 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 821 (1990). However, the government "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford County, Inc.,* 467 U.S. at 60, 104 S.Ct. 2218. In particular, equitable estoppel against the United States government is appropriate only when the government agent whose actions were relied upon was acting within the scope of the agent's authority. *Office of Personnel Management v. Richmond,* 496 U.S. at 419–20, 110 S.Ct. 2465; *Emeco Indus., Inc. v. United States,* 485 F.2d at 657.

In addition, the four traditional elements a party asserting an equitable estoppel claim is required to establish are: (1) the government must have knowledge of the true facts; (2) the government must intend that its conduct will be acted upon, or act in a way that the party asserting the estoppel has a right to believe the conduct was intended to be acted upon; (3) the party asserting the estoppel must not have knowledge of the true facts; and (4) the party asserting the estoppel must rely on the government's conduct to his or her detriment. *JANA, Inc. v. United States,* 936 F.2d 1265, 1270 (Fed.Cir.1991), *reh'g denied* (1991), *cert. denied,* 502 U.S. 1030, 112 S.Ct. 869, 116 L.Ed.2d 775 (1992) (citing *Am. Elec. Labs., Inc. v. United States,* 774 F.2d 1110, 1113 (Fed.Cir.1985); *Emeco Indus., Inc. v. United States,* 485 F.2d at 652, 657). A party who is asserting an equitable estoppel claim against the United States government bears a heavy burden of proving the elements of equitable estoppel. *See Heckler v. Cmty. Health Servs. of Crawford County, Inc.,* 467 U.S. at 61, 104 S.Ct. 2218.

The plaintiff argues that the elements of equitable estoppel have been met in this case for the following reasons: (1) the defendant lured the plaintiff into risking his life to assist the defendant in law enforcement operations; (2) the defendant intended to get the plaintiff to assist in those law enforcement operations; (3) the plaintiff believed the defendant was sincere in its dealings and promises of payment; and (4) the plaintiff acted in reliance on the defendant's conduct and assurances of compensation to his detriment. The plaintiff argues, therefore, that the government should be estopped from denying existence of a contract with the plaintiff.

Even if the plaintiff's assertion, that the four elements necessary to justify an equitable estoppel claim have been satisfied, is correct, the plaintiff overlooks the fact that such a claim can be asserted against the government only when the agents on whose conduct the plaintiff relied were acting within the scope of their authority. As discussed above, the government agents on whose conduct the plaintiff relied, DEA Special Agents Garcia, Ceren, and Dobrich, did not possess the requisite authority to enter into a binding contract on behalf of the government. The plaintiff, therefore, has failed to prove that the DEA Special Agents acted within the scope of their authority. Consequently, the doctrine of equitable estoppel is not applicable against the defendant in this case. The "United States will not be estopped to deny the acts of its agents who have acted beyond the scope of their actual authority." *Yosemite Park and Curry Co. v. United States,* 217 Ct.Cl. 360, 582 F.2d 552, 558 (1978). Accordingly, the plaintiff's equitable estoppel claim must fail.

In its motion for summary judgment, the defendant also argues that it is entitled to judgment as a matter of law because the plain language of the June 10, 1998 Cooperation Agreement signed by the plaintiff does not entitle him to compensation. Specifically, the defendant points to paragraph 8 of the June 10, 1998 Cooperation Agreement, which states: "The amount of any payments paid to me by DEA for my cooperation shall be at the discretion of DEA, and no sum certain can be guaranteed by any officer or employee thereof." The defendant asserts that the plaintiff's subjective understanding that the Cooperation Agreement was an enforceable

contract is incorrect because of the plain and unambiguous terms of the agreement and, therefore, that the Cooperation Agreement did not obligate DEA to pay the plaintiff a fixed monetary sum. "Where the provisions of a contract are phrased in clear and unambiguous language, the words of those provisions must be given their plain and ordinary meaning." *Triax–Pacific v. Stone*, 958 F.2d 351, 354 (Fed.Cir.1992); *see also George Hyman Constr. Co. v. United States*, 832 F.2d 574, 579 (Fed.Cir.1987) (citing *Elden v. United States*, 223 Ct.Cl. 239, 617 F.2d 254, 260–61 (1980)). A reading of the Cooperation Agreement, indeed, reflects that the language of the Cooperation Agreement is clear and unambiguous, leaving payment of confidential informants to the discretion of DEA. By signing of the June 10, 1998 Cooperation Agreement, which includes such clear discretionary language, the plaintiff also fails the third prong of the test required to raise an estoppel argument.

Finally, the defendant argues that the determination of whether or not to withdraw a recommendation of an award to a confidential informant is also discretionary. Departmental awards for good service are by their very nature, and pursuant to the terms of the Cooperation Agreement, discretionary. The defendant appears to have acted reasonably, when it withdrew its recommendation for an award to the plaintiff, based on the defendant's unrefuted assertion that the recommendation for an award was withdrawn due to "unsatisfactory/unlawful conduct."

## CONCLUSION

For the reasons set forth above, the defendant's motion for summary judgment is, hereby, **GRANTED**, and the plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter judgment consistent with this opinion.

**IT IS SO ORDERED.**