## LOGAN COUNTY *v.* UNITED STATES.[1]

### APPEAL FROM THE COURT OF CLAIMS.

No. 167. Argued January 5, 6, 1898. — Decided February 21, 1898.

Where a railroad company pays a tax on its undistributed surplus under the internal revenue act of June 30, 1864, c. 173, 13 Stat. 223, it is thereby paying a tax upon its own property, and such payment cannot be regarded as a payment of a tax upon a stock dividend thereafter declared by the company.

THE case is stated in the opinion.

*Mr. Charles C. Binney* for appellants. *Mr. Assistant Attorney General Pradt* was on his brief.

*Mr. Alphonso Hart* for appellees. *Mr. Fontaine T. Fox* was on his brief.

---

[1] The docket title of this case is "The Commissioners of the Sinking Fund of Logan County and the County of Logan, Kentucky, Appellants, *v.* The United States."

Mr. Justice Peckham delivered the opinion of the court.

This application was made to recover taxes heretofore paid, and, like the one in the preceding case, it is based upon the statement that the tax could not be imposed as against the county of Logan, because it was a municipal corporation, and not subject to taxation by Congress upon its municipal revenues. *United States* v. *Railroad Company*, 17 Wall. 322. Therefore, if it appear that the railroad company has deducted from the dividend due the county the amount of any tax paid to the Government on a stock dividend issued by the company, the appellants are entitled to recover. The facts are quite simple.

On the 14th of March, 1894, the appellants filed their petition in the Court of Claims for the refunding of taxes which they claimed to be entitled to under the act of February 25, 1893, c. 165, 27 Stat. 477. The act is set out in full in the margin in the preceding case of *United States* v. *City of Louisville,* *ante,* p. 249. The claim made herein was for internal revenue taxes alleged to have been illegally assessed, and amounting to the sum of $17,606.14. Under the provisions of the statute above cited the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, audited and adjusted this claim at the sum of $15,397.75, and in due course of procedure it came to the Comptroller of the Treasury, who directed a warrant to issue for the sum of but $9533.54 (the total amount withheld from the county on account of taxes on cash dividends), and he refused to include in the warrant the sum of $5864.21, being the balance of the $15,397.75 which had been audited and adjusted as above mentioned, because, as the Comptroller held, the claim for taxes paid on account of stock dividends was illegal and unauthorized, and this suit is brought to recover the sum which was rejected by the Comptroller, and which he refused to pay. The Court of Claims gave judgment in favor of the Government and dismissed the petition of claimants, who have appealed to this court from the judgment of dismissal.

The point first made by the counsel for the claimants is

that the audit and adjustment made by the Commissioner of Internal Revenue, and approved by the Secretary of the Treasury, under the act of Congress of 25th of February, 1893, was an award having all the force of a judgment which could not be questioned either by the Comptroller of the Treasury or by the courts, except for fraud or mistake. The cases of *United States* v. *Kaufman,* 96 U. S. 567, and *United States* v. *Savings Bank,* 104 U. S. 728, are cited for the purpose of showing the conclusiveness of the action of the officers above named.

All that those cases hold is, that where in a case somewhat similar to this the claim had been allowed by the officers named in the statute, "the allowance may be used as the basis of an action against the United States in the Court of Claims, where it will be *prima facie* evidence of the amount that is due, and put on the Government the burden of showing fraud or mistake. This burden is not overcome by proving that some other officer in the subsequent progress of the claim through the department declined to do what the law or Treasury regulations required of him before payment could be obtained. The fact of fraud or mistake must be established, by competent evidence, the same as any other fact in issue. An allowance by the commissioner in this class of cases is not the simple passing of an ordinary claim by an ordinary accounting officer, but a statement of accounts by one having authority for that purpose under an act of Congress." *United States* v. *Savings Bank,* 104 U. S. 728, at 733. The question of the conclusiveness of the action of the officers of the Government under their general powers is also referred to in *Wisconsin Central Railroad* v. *United States,* 164 U. S. 190, and it is there held that the Government is not bound by the act of its officers in making an unauthorized payment under misconstruction of the law. However, the act of the Commissioner of Internal Revenue and the Secretary of the Treasury in approving the claim may be assumed to be *prima facie* evidence that the amount so approved by them was due the claimant from the Government, and the burden therefore rested upon the Government of showing that the allowance of

the amount claimed in this proceeding was made through a mistake on the part of those officials.   Unless this mistake is made apparent by the findings of the court below, its judgment in refusing to give effect to the allowance of the Commissioner of Internal Revenue, approved by the Secretary of the Treasury, might have to be reversed.   If, however, the findings show that those officials did make a mistake in allowing that portion of the claim made which is now in suit, the judgment of the court below, so far as this point is concerned, must be affirmed.

The defence made by the Government upon the merits is based on the provisions of the statute of 1893, and upon the allegations that the findings of the court below substantially show there were no taxes paid upon any stock dividends declared in 1867 or 1868.   It is added that the claim on the part of the county of Logan was not in reality for any taxes actually paid on "dividends in scrip" or "stock dividends" issued to appellants, but that it was for a certain proportion of the taxes paid by the railroad company on that part of its profits which were not distributed in dividends, and which in fact constituted what the internal revenue acts of 1864 and 1866 called "profits carried to the account of any fund or used for construction," and which funds were taxable under those acts, as the property of the corporation.

Counsel insists that a tax upon undistributed profits in the treasury or belonging to the corporation is like a tax on gross earnings, a tax on the corporation on account of its own property, and not to be thereafter recovered by this claimant, either under the act of 1893 or under those sections of the United States Revised Statutes therein alluded to.

It must be remembered that the Court of Claims under the act of 1893 was simply given jurisdiction to examine a claim which was otherwise barred by the statute of limitations. The act gave no other right and created no claim against the Government not otherwise existing.   The right of recovery for an illegal tax had been provided for by the Revised Statutes of the United States, section 3220, and that remedy could have been pursued for two years after the payment of

any such tax. Rev. Stat. § 3228. In this case the time thus limited had expired, and the act of 1893 was passed for the purpose of setting aside the bar of the then existing statute. The right to demand the refunding of the money in dispute must depend therefore upon the question whether any tax on a stock dividend had been collected from the company by the Government, and a proportionate amount thereof deducted by the company from the dividend otherwise due the county. No deduction of any tax from the scrip dividend due to the claimant was ever made in terms. It is sought to be inferred from the fact that a prior payment of a tax by the company on its undistributed surplus had thereby diminished that fund by the amount of the tax, and that a stock dividend must be assumed to represent profits not distributed in cash dividends, and that the claimant would have received more stock if the profits had not been diminished by the payment of the tax from which it is said a municipal corporation was exempt under the decision of the Supreme Court in the case of *Wisconsin Central Railroad* v. *United States*, above cited. Of course, the payment of the tax diminished the profits of the company by just that amount. But, at the time when it was paid, the full amount thereof was due the Government from the company itself, and not one penny could properly have been deducted from the amount of the tax by reason of the fact that a municipal corporation owned a certain amount of the stock of the company. All taxes which were levied on the property of the company were payable in their full amount by the company, and not a dollar could be legally deducted from such tax on account of the character of any owners of its stock. Consequently, when a stock dividend is declared, the fact that the directors might have chosen to declare a larger one if it had not been for the payment of the taxes the company had made on its own property, is entirely immaterial. So is the fact, if it be a fact, that the total stock dividend was reduced by the amount which the company had theretofore paid as a tax upon its undistributed surplus.

There is no finding of the court below which in terms shows that the tax in question here was ever paid on a " stock " or

"scrip" dividend. All that appears is that a stock dividend of forty per cent on its capital was declared by the railroad company by a resolution adopted on the 16th of November, 1867, which provided that the stock should be issued on February 10, 1868.

The court below did find that prior to the passage of the act of February 25, 1893, certain proceedings had theretofore taken place in the Treasury Department relative to the same taxes paid by the same railroad company. (The court in this finding referred to the proceedings in regard to the claim made by the city of Louisville for a return of taxes, under the circumstances detailed in that case, just decided, *ante*, p. 249, and which are therein set forth.)

The court then set forth in this case the finding made in the *Louisville case*, and in that case, after speaking of the fact that cash dividends had been declared upon the stock of the railroad company, and that there existed a large amount of undistributed surplus in the treasury of the railroad company, the finding continued: "These cash dividends and the undistributed surplus which was converted into stock or scrip dividends were held by the officers of the Government to be subject to taxation, and taxes were assessed and collected according to the terms of the statute in force at the time of the respective collections."

Taking all the facts as found by the court below, it appears that the only tax paid was paid on the undistributed surplus of the company while it remained such surplus in its hands and while it was a portion of its own property, as much so as anything else owned by it, and that thereafter the company declared a stock dividend of forty per cent upon its old capital.

By the provisions of the internal revenue act of 1864, section 122, a stock dividend was subject to a tax of five per cent. So far as material the section provides: "That any railroad . . . that may have declared any dividend in scrip, or money due or payable to its stockholders, as part of the earnings, profits, income or gains of such company, and all profits of such company carried to the account of any fund,

or used for construction, shall be subject to and pay a duty of five per centum on the amount of all such interest, or coupons, dividends or profits, whenever the same shall be payable; and said companies are hereby authorized to deduct and withhold from all payments, on account of any interest, or coupons and dividends due and payable as aforesaid, the duty of five per centum," etc.

Under this plain provision of the statute it is perfectly clear that the stock dividend in question was a proper subject of taxation. But, as already mentioned, there is no finding that any such tax has been paid, and, of course, none that any deduction on its account was ever made from any dividend due the county. On the contrary, from the findings that have been made, it appears that the only tax which has been paid was paid by the railroad company upon its undistributed surplus at a time when such fund was its own absolute property. That fact, taken in connection with the declaration of the dividend of forty per cent upon the amount of the capital of the railroad company, does not show a payment of the tax on the stock dividend declared under the resolution mentioned.

It is plain that this surplus fund, which, at the time it was taxed, belonged to the company, was not distributed to the stockholders, nor was it converted into stock by reason of the stock dividend. If it had been a cash dividend sufficiently large in amount to cover the surplus, then the payment of the dividend would have affected the distribution of the fund. But no distribution could take place by any stock dividend. Such a dividend distributed nothing but stock, which made the stockholder neither richer nor poorer than he was before it was issued.

Although the court finds that the undistributed surplus of the railroad company was held by the officers of the Government to be subject to taxation, and taxes were assessed and collected according to the terms of the statute in force at the time of the respective collections, yet such fact does not advance us a step in the direction of showing that any duties were paid on the stock dividend. The tax or duties had been

paid by the company on a fund which then belonged to it. Unless payment of the tax on this undistributed surplus was in substance a payment of the five per cent tax on the stock dividend, then there is no finding that any such payment was ever made.    That payment cannot be so regarded because the tax on the undistributed surplus was a tax upon the property of the company and was paid as such by the company, and if the amount thereof were deducted by the company from its subsequent stock dividend, that would be an act of the company, and would not render the prior payment of the tax on the undistributed surplus improper even with regard to Logan County.   Otherwise all payments of taxes made by a company upon its own property would be subject to a deduction proportioned to the amount of its stock held by States or other corporations of a municipal character.    The adoption of the resolution for a stock dividend, together with the issue of the stock, could have absolutely no effect upon the undistributed surplus fund, so far as any distribution thereof was concerned.    The shareholder got no more interest in or right to that fund than he had before, and the prior payment of the tax upon it did not thereby decrease the amount of the forty per cent dividend upon the old capital by a penny.    And yet it is only upon the payment of the tax which the company made on its property, in the shape of its undistributed surplus, that the claimants can by this record found their claim to recover their proportion of such tax.    If allowed, then the claimant could, upon the same reasoning, recover its proportion of every tax paid by the company upon any other of its property, unless the statute of limitations applied.    If the company in fact reduced its stock dividend by the amount of the tax which it had previously paid on the surplus fund belonging to it, such fact gives no support to the claim of the county to recover from the Government an amount of a perfectly legal tax.    And as before stated, the proof really is that there was no other payment of a tax than one upon the surplus as the property of the company.

An effort is made to show that this payment of a duty or tax on the undistributed fund might be treated as a payment

of such duty or tax on the stock dividend, under the proviso contained in section 121 of the statute of 1864, which reads: " *Provided,* That when any dividend is made which includes any part of the surplus or contingent fund of any . . . railroad company, which has been assessed and the duty paid thereon, the amount of duty so paid on that portion of the surplus or contingent fund may be deducted from the duty on such dividend."

It is perfectly apparent that this proviso includes only cash dividends. It is a dividend which is to include for distribution any part of the surplus or contingent fund of a railroad or other company. How can a stock dividend distribute a fund? As already remarked, a stock dividend distributes nothing but stock. Hence, there is no sense in applying the statute to a case where no distribution of a fund is made and where the fact of a double payment on the fund cannot arise. The proviso clearly refers to a case where a surplus has already paid duty and where subsequently to that time it is distributed to the shareholders. Under such circumstances that portion of the dividend which has thus once paid its duty of five per cent is not to be taxed again when distributed to the shareholders. But so long as there is no distribution, the tax paid on the surplus as surplus and which belonged to the corporation when the tax was paid, is not to be credited on or deducted from a subsequent tax upon a stock dividend which does not distribute the surplus nor in any manner change its ownership.

We agree, therefore, with the opinion of the court below, and we hold that where a railroad company pays a tax on its undistributed surplus under the act of 1864, it is thereby paying a tax upon its own property, and that such payment cannot be regarded as a payment of the tax upon a stock dividend thereafter declared by the railroad company.

The judgment of the Court of Claims should, therefore, be

*Affirmed.*