# CARVER v. UNITED STATES.
## No. 42716.

Court of Claims.
May 29, 1939.

Francis R. Lash, of Washington, D. C. (C. Leo DeOrsey, of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C. and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States. .

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS and WHALEY, Judges.

GREEN, Judge.

This action involves income taxes which became due more than twenty years ago but which was only submitted to this court at the last term thereof. If the proceedings since the tax was assessed had at certain stages thereof received a tithe of the attention given to the case since the action was begun in 1934, the result would probably have been quite different. Indeed, it is possible there would have been no suit whatever.

The plaintiff filed his individual Federal income tax return for the year 1917 on March 30, 1918, reporting thereon a tax of $68,389.98 which was paid June 5, 1918. The income reported included plaintiff's share of the net profits of the partnership in which the plaintiff and Joseph B. Morrell were equal partners.

During 1921 a Mr. Greene was attorney in fact for the partnership and the plaintiff and on May 13, 1921, he mailed a letter to the Commissioner of Internal Revenue duly stamped and addressed. This letter contained a statement which plaintiff

contends amounted to an informal claim for refund. This statement will be hereinafter set out and considered.

On May 22, 1923, Greene addressed another letter to the Commissioner in which he referred to the outstanding and unpaid balance of $51,060.56 and asked that the partnership's profits tax liability be redetermined on the basis of special assessment. The Commissioner first denied this request and then after receipt of a brief and protest filed about February 11, 1925, allowed the special assessment and redetermined the profits tax liability. About January 16, 1926, a certificate of overassessment was delivered to the partnership showing a net overassessment of $51,060.56 to have been abated. This disposed of the remaining balance of the additional tax of $126,060.55 which had been assessed during 1919.

On December 8, 1926, the Commissioner of Internal Revenue advised plaintiff of a deficiency of $31,137.75 for the calendar year of 1917 which was formally assessed. This deficiency letter and the assessment were timely under a waiver which plaintiff had filed.

On February 7, 1927, the plaintiff filed a timely appeal with the United States Board of Tax Appeals from the deficiency letter of December 8, 1926. No hearing was ever had on that appeal. On August 22, 1928, counsel for the respective parties filed a stipulation with the Board agreeing that a correct determination of plaintiff's tax liability for the year 1917 disclosed an overpayment in the amount of $3,814.27, and pursuant to the stipulation the Board entered an order from which no appeal was ever taken reading as follows: "Ordered and decided: That, upon redetermination, there is an overpayment for 1917 of $3,814.27."

On November 12, 1928, the Commissioner signed a schedule of overassessments, including one in plaintiff's favor of $31,137.75 for the year 1917 and on November 28, 1928, there was delivered to plaintiff a certificate of overassessment reading in part as follows:

| | |
|---|---|
| Overassessment | $34,952.02 |
| Barred by statute of limitations | 3,814.27 |
| Overassessment allowable | 31,137.75 |

The item of $31,137.75 was thereafter abated in full but the Commissioner de-clined to refund the item of $3,814.27 (which is the amount involved in this suit) upon the ground that it was barred by the provisions of section 507 of the revenue act of 1928, which will be hereinafter set out and the effect of its application to the facts in the case determined.

On October 7, 1932, the plaintiff filed with the collector of internal revenue for his district a claim for refund in the amount of $29,643.04, but any claim for recovery thereon is now abandoned by him. The case of plaintiff is now based on the allegation that plaintiff had filed a timely though informal claim for refund of the overpayment of $3,814.27 determined by the Board of Tax Appeals and this presents the main issue in the case.

As shown in Finding 6, in determining and reporting his taxable net income and the tax due thereon the plaintiff did not take as a credit against his net income his proportionate share of the partnership's excess profits tax. In his letter of May 13, 1921, to which reference has been made above, the attorney for the plaintiff acknowledged the receipt of the letter of the Commissioner dated March 11, 1921, and objected to the computation of the tax liability made by the Commissioner for several reasons. Plaintiff particularly relies upon a statement made in the letter which reads as follows: "(6) A change in the excess profits tax of the firm for 1917 affects the excess profits credit on the returns of the individual partners for that year. Would it be possible to have the credit due them, i. e., Mr. Joseph B. Morrell and Mr. Amos D. Carver, on their returns on this account taken care of at the same time?"

It is argued in behalf of plaintiff that the above statement quoted from the letter of the attorney for the plaintiff constituted an informal claim for a refund.

It will be observed that this statement does not ask for a refund and makes no claim that plaintiff is entitled to one, nor can we find in it any language which might be construed as making such a claim. It is merely an inquiry as to whether a certain thing could be done in making up the accounts of the individual parties. We do not consider it an informal claim which could afterwards be perfected. It is urged on behalf of the plaintiff that it was afterwards perfected by being allowed. It

is true that after some long drawn out proceedings the matter of plaintiff's liability for taxes was submitted to the Board of Tax Appeals which found his taxes had been overpaid in the amount for which plaintiff now seeks judgment. If the plaintiff's attorney in the letter of May 13, 1921, had claimed that a recomputation of plaintiff's income tax on the lines suggested in the letter would show it was entitled to a refund, this might have furnished a base for arguing that an informal claim for refund was made in the letter, but no such statement was made. We find nothing in the cases cited by counsel for plaintiff which would sustain a holding that a mere suggestion of a change in the computation of the tax would constitute an informal claim for a refund.

After this letter was written the Commissioner recomputed the tax and held that a deficiency existed. From this determination the plaintiff appealed to the Board of Tax Appeals. Thereafter the Board held and entered an order pursuant to a stipulation on August 25, 1928, that plaintiff had overpaid its taxes for 1917 in the amount of $3,814.27. This decision of the Board of Tax Appeals was not appealed from and became final as to the amount of overpayment and we have frequently held that it may become the basis of a suit to recover the amount thereof, but the right of recovery in cases like the one we have before us is subject to certain statutory restrictions, the effect of which will be hereinafter determined.

Plaintiff contends that as his suit was brought within six years of the time when the Board of Tax Appeals entered its determination he is entitled to recover the $3,814.27 found by the Board to be overpaid. In National Fire Ins. Co. v. United States, 52 F.2d 1011, 72 Ct.Cl. 663, 669, we held following the cases of Ohio Steel Foundry Co. v. United States, 38 F.2d 144, 69 Ct.Cl. 158, and Arthur Curtiss James v. United States, 38 F.2d 140, 69 Ct.Cl. 215, that where the Board of Tax Appeals determines an overpayment and no question of credits is involved, and the refund of the overpayment was not barred by the statute of

limitations at the time of the decision of the board, suit might be brought within six years from the date of the board's decision. But section 284(e) of the Revenue Act of 1926, 44 Stat. 66, as amended by section 507 of the Revenue Act of 1928, 45 Stat. 871, provides that when the board finds that the taxpayer has made an overpayment—"Unless claim for credit or refund, or the petition, was filed within the time prescribed in subdivision (g) for filing claims, no such credit or refund shall be made of any portion of the tax paid more than four years (or, in the case of a tax imposed by this title, more than three years) before the filing of the claim or the filing of the petition, whichever is earlier."

The case of National Fire Ins. Co., supra [52 F.2d 1013, 72 Ct.Cl. 663], like the one at bar, was a suit upon an overpayment determined by the Board of Tax Appeals and it was held therein that the jurisdiction of the board extends "only to the determination of the fact of overpayment and the amount thereof," that the right to sue for the overpayment in such cases depends upon section 284(e) of the act of 1926, as amended, being the provision heretofore set out, and that it is governed thereby "and not by the provision of section 156 of the Judicial Code (28 U.S.C.A. § 262) as for suits upon claims against the United States." The court further held that in such cases "the right to recover is dependent upon whether a timely and sufficient claim for refund was filed" and, having found that no such claim had been filed within the time allowed by section 284(g) of the Revenue Act of 1926, 44 Stat. 66, it was held that the plaintiff could not recover and the petition was dismissed.

The rules laid down in the National Fire Ins. Co. case, supra, are applicable here.

In the instant case we have held that the so-called informal claim was not in fact any claim for refund whatever. It follows that the provisions of section 284 (g)[1] of the Revenue Act of 1926 were not complied with and that plaintiff cannot re-

---

1 Subdivision (g) of section 284 of the revenue act of 1926 provided, among other things, with reference to such cases as we have before us, that the credit or refund "shall be allowed or made if claim therefor is filed either (1) within four years from the time the tax was paid, or (2) on or before April 1, 1926"; also that "This subdivision shall not authorize a credit or refund prohibited by the provisions of subdivision (d)."

cover upon the finding and determination of the Board of Tax Appeals.

The certificate of overassessment furnishes no better basis for plaintiff's suit than the determination of the Board of Tax Appeals. We have held in several cases that where the Commissioner issues a certificate of overpayment and in the certificate states erroneously that the overpayment is barred and by reason thereof a refund is refused, suit may nevertheless be maintained on the certificate as an account stated, the overpayment not being in fact barred. But here we have a different situation. The refund of the overpayment was barred for the same reason that an action upon the finding of the Board of Tax Appeals was barred, as shown above, and the conclusion of the Commissioner was correct. The certificate of overassessment was brought about by the determination of the Board of Tax Appeals and the statement of the amount of overpayment is merely a restatement of the finding of the board. Conceding arguendo that the certificate of overpayment constituted an account stated in favor of the plaintiff, it is nevertheless governed by statutory provisions. As was said in Goodenough, Trustee, v. United States, 19 F.Supp. 254, 85 Ct.Cl. 258, 299, an account stated gives rise to an implied promise to pay the indebtedness set forth, but "recovery on this implied promise may be barred by lapse of time" and it may also be barred by an express statutory provision, as it was by the same provisions that barred an action on the determination of the Board of Tax Appeals.

The plaintiff's petition must be dismissed and it is so ordered.

BOOTH, Chief Justice, and WHALEY and WILLIAMS, Judges, concur.

LITTLETON, Judge (concurring)

I concur in all that is said in the foregoing opinion and desire only to point out, first, that the letter of May 13, 1921, written by the attorney-in-fact of the partnership and plaintiff clearly did not have reference to the second or double deduction of the profits tax due by the partnership, as a separate taxable entity, from the plaintiff's distributable share of the net income of the partnership remaining after the deduction from the total net taxable income of the partnership of the total profits tax due by such partnership; and, second, that even if the inquiry of plaintiff's attorney on May 13, 1921, could be regarded as a claim for refund, informal or otherwise, the provisions of the Revenue Act of 1917, which levied an excess profits tax on the net income of the partnership, did not authorize a double deduction of the excess profits tax due by the partnership, first, from the total net income of the partnership in determining the distributable share of the partners; and, second, another deduction of such profits tax by the partners when returning as their income such distributable share of the partnership net income remaining after the first deduction of such profits tax.

At the time the letter of May 13, 1921, finding 4, was written, it was the established and uniform practice of the Bureau of Internal Revenue to determine the total net taxable income of the partnership and in accordance with the provisions of the Revenue Act of 1917 to compute thereon an excess profits tax which was payable by the partnership. After such profits tax had been determined, the amount thereof was deducted from the total net income of the partnership, which, except for such profits tax, would be distributable and taxable to the partners. After the profits tax had thus been deducted from the total net income of the partnership, the balance was treated as the amount distributable and taxable to the partners in the proportion of their interests in the partnership. A second deduction of the profits tax due by the partnership was not under the regulations and decisions then in force allowed to the partners from their distributable income of the partnership as so determined. The letter of May 13, 1921, obviously had reference only to the one deduction of the profits tax which was then being consistently allowed in determining the amount of the distributable income of the partnership taxable to the partners. Its language clearly so shows for the reason that it was simply an inquiry of the Commissioner whether the distributable share of the partners could be determined at the same time the final determination was made in respect of the taxable net income and excess profits tax of the partnership, inasmuch as a change in the excess profits tax of the partnership which was deductible from the total net income of the partnership in determining the remainder

distributable and taxable to the partners would affect the amount so distributable and taxable to the partners. It was not until more than five years later, on November 3, 1926, that the case of Reid v. Rafferty, 2 Cir., 15 F.2d 264, was decided· in which it was held, and I think erroneously, that notwithstanding the excess profits tax imposed upon and due by the partnership upon its total net taxable income had been deducted from such total net income in determining the distributable share taxable to the partners, the partners were again entitled in reporting such distributable share for income tax purposes to again deduct from such distributable shares the total excess profits tax due by the partnership. The overpayment here sought to be recovered results from such second deduction which was clearly a different ground than that to which the letter of May 13, 1921, had· referred. It is obvious that if the attorney of the partnership and plaintiff had been referring to the second deduction, which had up to that time never been allowed, he would have stated his position with reference thereto in language sufficiently clear not to be misunderstood. It is clear, therefore, that even if the letter could be treated as an informal claim for refund, it did not specify the ground or facts upon which this suit is based.

I am of opinion that the Revenue Act of 1917 authorized and allowed only one deduction of the excess profits tax of the partnership in determining the distributable income of the partnership taxable to the partners and that, for that reason, plaintiff has underpaid rather than overpaid his taxes. In the case at bar the total net taxable income of the partnership was $544,488.-87 and the excess profits tax due and paid by the partnership was $161,005.37. After the deduction of this profits tax from the net income of the partnership distributable and taxable to the partners, the amount so distributable and taxable was $383,483.50 (finding 5). The overpayment here sought to be recovered is based upon a deduction the second time of excess profits tax of $161,005.37 from the distributable net income of the partnership of $383,483.50 remaining after the first deduction of such profits tax. The overpayment here sought to be recovered is therefore based upon a deduction by the partners of twice the amount of profits tax of the partnership, or $322,010.74 instead of $161,005.37. In other words, under plaintiff's contention each partner gets a deduction of the entire profits tax of the partnership from his distributable share of the partnership's net income rather than his proportion of the profits tax of the partnership.