William H. JOHNSON, Jr., Dorothy
Battle Johnson, Executrix,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 99–936T.

United States Court of Federal Claims.

Oct. 25, 2002.

Ronald E. Krieger, New York City, attorney of record for plaintiff.

Mary M. Abate, Washington, D.C., with whom was Assistant Attorney General Eileen J. O'Connor, for defendant.

## *OPINION*

REGINALD W. GIBSON, Senior Judge.

INTRODUCTION

This case is before the court on cross-motions for summary judgment. Plaintiff is the executrix of the taxpayer, William H. Johnson, Jr., and alleges that an implied-in-fact contract arose when the IRS informed her by letter that—"Your [income tax refund] claim has been allowed in full." The undisputed amount at issue, approximately $30,000, collected by the government from William H. Johnson, Jr. between August 31, 1990 and December 2, 1991, was held to have been time-barred under a tax refund claim in the U.S. District Court for the Southern District of New York,[1] pursuant to 26 U.S.C. § 6511(b)(2)(B).[2] Although plaintiff's claim is here before us on a contract theory, any recovery thereupon must also be constrained by the time-limiting statutes governing tax refund claims given that the very subject matter of the alleged contract *is, in fact, a tax refund.*[3]

Based upon the foregoing, and for reasons discussed in detail below, plaintiff's motion

---

1. The district court dismissed plaintiff's tax refund claim for periods preceding December 3, 1991, for lack of jurisdiction under 28 U.S.C. § 1346, finding that said period was time-barred by 26 U.S.C. § 6511.

2. "Limit where claim not filed within 3–year period.– If the claim was not filed within such 3–year period [from the time the return was filed], the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B).

3. *See Carver v. United States,* 89 Ct.Cl. 252, 27 F.Supp. 608, 614 (1939).

for summary judgment is hereby DENIED, and her contract claim is dismissed for failure to state a claim upon which relief can be granted. Defendant's cross-motion for summary judgment is hereby GRANTED.

JURISDICTION

The Court of Federal Claims has jurisdiction, pursuant to 28 U.S.C. § 1491(a)(1), to hear claims against the United States that are founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States. *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1078 (Fed.Cir.2001).

FACTUAL BACKGROUND

This case comes before us by way of transfer, pursuant to 28 U.S.C. § 1631, from the U.S. District Court for the Southern District of New York, where Judge Stein best characterized the facts herein as being "both largely undisputed and relatively convoluted." [4] That court commendably charted the operative course of events and the cause of action before it. We shall endeavor to do likewise.

The taxpayer, William H. Johnson, Jr., was a retired New York City police officer who failed to timely file a federal individual income tax return Form 1040 for the 1986 tax year. As a result, in November 1989, the Internal Revenue Service ("IRS") prepared a "substitute" 1986 tax return on behalf of Mr. Johnson based upon his estimated income. [5] In March 1990, the IRS issued a notice of deficiency reflecting a total tax liability of $47,249.63 based upon its calculations in the substitute tax return. [6] To satisfy said deficiency, the IRS began collecting payments in equal installments of $499.68 from the taxpayer, Mr. Johnson, where some sixty-one (61) installment payments and three (3) levies were collected in all between 1988 and 1995, aggregating $60,652.63. [7]

Apparently Mr. Johnson had been ill for several years before his death in November 1994, and never filed on his own behalf a 1986 tax return. In January 1996, plaintiff, Dorothy Battle Johnson, his spouse and executrix, caused a 1986 Form 1040 individual tax return to be filed on Mr. Johnson's behalf, which claimed a total tax liability of $3,086 for subject tax year, and was duly accepted by the IRS. [8] Notwithstanding Mr. Johnson's prior failure to *timely* file a 1986 tax return, he purportedly did file an administrative refund claim on or about December 3, 1993, in the amount of $46,500.72. [9] That refund

4. *Johnson v. United States,* 1999 WL 493341, at *1 (S.D.N.Y.1999).

5. "When a taxpayer fails to file a return and refuses [or otherwise fails] to disclose relevant information to the IRS [respecting a given taxable year], the Internal Revenue Code authorizes the agency to make and execute a substitute return for the taxpayer which 'shall be prima facie good and sufficient for all legal purposes.'" *United States v. Silkman,* 220 F.3d 935, 936 (8th Cir.2000) (citing 26 U.S.C. § 6020(b)(2)). The IRS thereby estimated the taxpayer's gross income to be $77,039, of which $58,233 was attributed to the selling price of two mutual funds (without any adjustment for cost bases).

6. The $47,249.63 sum was comprised of $24,589 in taxes owed for 1986 plus $22,660.63 in interest and penalties.

7. Sixty-one (61) installment payments of $499.68 totaled $30,480.48, and three (3) levies at $657.69, $21,358.71 and $8,155.75 amounted to $30,172.15.

8. This (late) return reflected that the gross proceeds from the two (2) mutual funds sold at $13,956 and $44,277, had corresponding cost bases of $13,008 and $41,773, respectively, thereby significantly reducing the taxpayer's 1986 tax liability from $24,589 as estimated by the IRS in the 1989 substitute tax return. Accepting that the taxpayer's true tax liability for 1986 was in fact $3,086, the IRS added $1,917 in interest and penalties for a total obligation of $5,003. The government then applied $4,996.80 (representing the first ten (10) installment payments collected from July 5, 1988 to July 31, 1990) and a tax withholding credit for the 1986 year of $99, to satisfy in full the taxpayer's 1986 account. Remaining thereafter was a total of $55,655.83 in excess payments which had been collected by the IRS for the 1986 tax year.

9. The amount of this initial claim comprises monies collected from July 5, 1988 through November 4, 1993. The difference between the total amount collected ($60,652.63) and the amount of the initial refund claim ($46,500.72), which is not in dispute ($14,151.91), was by all indications transferred/credited to the taxpayer's 1987 tax year.

Between July 5, 1988 and June 29, 1989, five (5) payments of $499.68 were (collected by the IRS and) credited to the taxpayer's 1986 liability account prior to the March 1990 IRS deficiency notice. Because the taxpayer's pre–1986 tax rec-

claim remained outstanding until May 28, 1996, when the IRS informed plaintiff by letter that it had disallowed the claim on the grounds that said claim had not been timely filed.

In June 1996, plaintiff appealed the IRS decision to disallow the taxpayer's December 1993 claim. Therein, the plaintiff relied upon the equitable tolling doctrine [10] as the legal basis for the appeal. The Manhattan appeals division, in turn, based its decision to *allow* plaintiff's claim "in full" upon said doctrine. Evidently, the decision, by memorandum dated November 6, 1997, was recommended by the appeals officer, Phyllis Cayenne (signed and dated by her on October 20, 1997), and approved by the associate chief, Howard Kahn (signed and dated by him on October 21, 1997). Following thereon, an IRS Form Letter 913(RO), dated November 6, 1997, was sent to plaintiff notifying her that the December 1993 claim (*i.e.*, the subject of the appeal) "has been allowed in full."

Subsequent to that November 1997 decision to allow plaintiff's claim in full, the Appeals Division at some point reversed its decision.[11] For reasons not stated, the government's apparent reversal was unbeknownst to plaintiff until some six (6) months later when plaintiff's counsel inquired of the appeals officer, Ms. Cayenne, about the alleged anticipated "full" payment. Only *then* did Ms. Cayenne, or any IRS representative, explicitly inform plaintiff's counsel that no

such payment "in full" would be forthcoming pursuant to the November 1997 decision and letter.

Immediately acting thereupon, plaintiff filed suit in the U.S. District Court for the Southern District of New York, on May 4, 1998, "for a refund of moneys taken pursuant to 28 U.S.C. Section 1346, whereby federal district courts assert jurisdiction to recover any Internal Revenue tax alleged to have been erroneously or illegally assessed." Pl. Compl. (dist.ct.) at 1. Plaintiff further averred, in the initial complaint filed in the U.S. District Court for the Southern District of New York, that "[o]nce the Appeals officer submits her findings to the Associate Chief and he signs off on the case, the Associate Chief has *bound* the IRS to a settlement of the issue." Pl. Comp. (dist.ct.) at 5 (citing *Gardner v. Commissioner*, 75 T.C. 475, 1980 WL 4481 (1980)) (emphasis added).

In a Statement of Account dated May 25, 1998, defendant (IRS) advised plaintiff that $4,996 plus statutory interest was due to plaintiff, representing in part the amounts paid within three years of the January 1996 filing of the 1986 delinquent tax return/claim for refund. For reasons not in dispute before this court, the aforementioned amount plus an additional $9,156 (the balance of payments made during that three-year period) was subsequently transferred from the taxpayer's 1986 account and credited to the

ords were unavailable (*i.e.*, lost by the government), it is unclear why those collections occurred prior to the deficiency notice. Those payments have been described by plaintiff as "illegal seizures," as they were allegedly obtained before any assessment of tax liability had been ascribed to the taxpayer for 1986. Defendant postulates that those payments were made in conjunction with a pre-existing payment agreement with the taxpayer, possibly for a previous tax year (*e.g.*, 1975).

We do not find the question raised by the plaintiff respecting those five (5) payments to be material or probative.

10. The equitable tolling doctrine, as applicable to the tax code, is described in pertinent part as follows:

"Running of periods of limitation suspended while taxpayer is unable to manage financial affairs due to a disability.–

(1) In general.– In the case of an individual, the running of the periods specified in subsec-

tions (a), (b), and (c) shall be suspended during any period of such individual's life that such individual is financially disabled.

(2) Financially disabled.-

(A) In general.– For purposes of paragraph (1), an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require."
26 U.S.C. § 6511(h) (Supp.1998–2002).

11. It did so, presumably, because it realized that certain amounts inclusive in the claim period were outside of the statute of limitations. *See* 26 U.S.C. § 6511(a).

taxpayer's 1987 tax year. Then, following a pre-trial conference before Magistrate Judge Buchwald, defendant decided that the period within two years of the December 1993 administrative refund claim was also refundable to the taxpayer, and therefore issue a refund check in the amount of $18,041.93 to plaintiff.[12]

Given the foregoing, the District Court determined that the only amount remaining before it, approximately $30,000,[13] was collected by the government during periods *prior to December 3, 1991*. That court held said period to be outside of the statute of limitations (26 U.S.C. § 6511(b)(2)(B)), thereby depriving *that* court of subject matter jurisdiction. For that reason, the District Court dismissed the balance of the refund claim. Finding that plaintiff's claim partly sounded in contract, the District Court transferred the case to this court, pursuant to 28 U.S.C. § 1631, "in the interest of justice."

## DISCUSSION

### Standard of Review

Summary judgment is proper, pursuant to RCFC 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On summary judgment, the inferences to be drawn from the underlying facts contained in such materials must be viewed in a light most favorable to the party opposing the motion. *Id.*

The trial judge's primary function then is not to weigh the evidence and determine the truth of the matter, but rather it is to determine whether there are genuine issues of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law determines which facts are material, such that only those operative facts that could affect the outcome of a suit can properly preclude summary judgment. *Id.* at 248, 106 S.Ct. 2505.

### The Merits

As stated above, plaintiff brings her cause of action in this court under a contract theory after being time-barred pursuant to 26 U.S.C. § 6511 in U.S. District Court for the Southern District of New York, on a tax refund claim. Notwithstanding plaintiff's alternative theory of recovery, the contract claim here at bar must also be dismissed (for failure to state a clam upon which relief can be granted). The reason for such result is that the same statute of limitation (*i.e.,* § 6511) that proved fatal to plaintiff's "full" refund claim in the District Court also applies in this court due to the tax-based subject matter of the alleged contract claim.

Neither the amount of contract damages that plaintiff seeks, nor the time period during which the claim arose is disputed. Plaintiff effectively stipulates to both operative facts, to wit, that approximately $30,000 was collected by the IRS between August 31, 1990 and December 2, 1991, the latter being the more critical fact. Pl. Mtn. at 27. Finding, therefore, that no genuine issues of material fact are present, we proceed to determine which party, if either, is entitled to summary judgment as a matter of law.

This case, at the threshold, is about the basic rules of contracting with the government. The pivotal question here is—whether the government in fact can be bound in contract when a government agent, having the requisite authority to bind the government, enters into an agreement in contravention to relevant operating statutes and/or regula-

---

12. On or about January 21, 1999, the IRS issued a refund check in the amount of $18,041.93, whereby $11,492.64 depicted overpaid taxes, and $6,549.29 represented statutory interest.

13. To retrace the flow of funds: $60,652.63 was collected from the taxpayer between 1988 and 1995; $4,996.80 (collected between July 5, 1988 and July 31, 1990) was applied to the taxpayer's 1986 tax year according to the tax return filed in January 1996; $11,492.64 (collected between December 2, 1991 and November 4, 1993) was refunded to plaintiff executrix, by check dated January 21, 1999; $14,151.91 (collected between December 3, 1993 and December 8, 1995) was transferred/credited to the taxpayer's 1987 tax year; thus leaving a remaining (un-refunded) balance of *$30,011.28* (collected by the IRS between August 31, 1990 and December 2, 1991) which was allegedly transferred to the IRS's excess collections account.

tions. We answer that question in the negative.

Plaintiff contends that an implied-in-fact contract was formed with the IRS when Associate Chief Kahn signed and issued IRS Form Letter 913(RO) indicating that: "Your claim has been allowed in full." In proof of its position, plaintiff sets forth the basic elements of (implied-in-fact) contract formation, and avers that they have been met. Alternatively, plaintiff posits that the subject letter serves as an "account stated," having equal binding authority on the Government to perform a promise. Although the foregoing contract theories are for all intents and purposes mutually inclusive, we will consider each one separately.

*Implied–in–Fact Contract*

■ To establish an implied-in-fact contract with the government, there must be: (1) mutuality of intent to contract, (2) consideration, (3) lack of ambiguity of an offer and acceptance, and (4) *actual* authority of the government agent to bind the government. *City of El Centro v. United States,* 922 F.2d 816, 820 (Fed.Cir.1990). Determining the existence of the first three elements, while disputed by the parties, is all but secondary to the more critical fourth element, to wit, whether the government agent had actual authority to bind the government. Without the existence of actual authority to bind the government, irrefutably, establishing the other three elements would be a mere exercise in futility. We therefore begin this analysis by examining the fourth element, first.

■ While the government agent here is an associate chief appeals officer in the hierarchy of the IRS, we look, nevertheless, to the operative federal tax statutes and/or regulations to find authority to bind the government in contract. Pursuant to 26 C.F.R. § 601.106(a)(1)(ii), the [IRS] Appeals Division has the final and exclusive jurisdiction to bind the government to its decision; and both the chief and associate chief have the authority to approve final settlements. *See Gardner v. Commissioner,* 75 T.C. 475, 478–79, 1980 WL 4481 (1980). Based upon the foregoing, the *office or rank* of associate

chief undoubtedly holds the requisite authority to bind the government, but that is not the end of our analysis. The next inquiry is whether the associate chief in light of the facts in this case had the *actual* authority to bind the government.

*Federal Crop Ins. Corp. v. Merrill* [14] states an all important, if not paramount, rule regarding contracting with the government:

"Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.... *And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.*"

In *Federal Crop,* the respondents were farmers who sought to insure their wheat crop through a government-owned crop insurance corporation created by the Federal Crop Insurance Act. Acting as an agent for the insurance corporation, the local agricultural committee advised the farmers that their spring wheat reseeded on winter wheat acreage was insurable. Upon later filing a claim that their wheat crop had been destroyed by drought, the respondents' claim was denied because the governing regulations precluded coverage of reseeded wheat. The respondents argued that they had no actual knowledge of the regulations, and that they reasonably relied upon the representations made by the government agent.

The U.S. Supreme Court reversed the decision of the Idaho State Supreme court, finding:

"If the Federal Crop Insurance Act had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat."

*Id.* at 384, 68 S.Ct. 1.

"Accordingly, the Wheat Crop Insurance Regulations were binding on all who

---

**14.** 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10    (1947) (emphasis added).

sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance."

*Id.* at 385, 68 S.Ct. 1.

In the case at bar, plaintiff alleges that a binding implied-in-fact contract was formed when the IRS Associate Chief of the Appeals Division informed plaintiff that her "claim has been allowed in full," even though the tax refund claim period is plainly outside of the limitations period(s) permitted by statute. The operative statute here is 26 U.S.C. § 6511–Limitations on credit or refund, which states in pertinent part:

"(a) Period of limitation on filing claim.-

Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid."

"(b) Limitation on allowance of credits and refunds.-

(1) Filing of claim within prescribed period.- No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

(2) Limit on amount of credit or refund.-

(A) Limit where claim filed within 3–year period.- If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return.

(B) Limit where claim not filed within 3–year period.- If the claim was not filed within such 3–year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim."

It is interesting to note how the IRS applied 26 U.S.C. § 6511 to the two claims for refund filed with respect to the 1986 taxable year in determining the amounts it previously refunded. First, with respect to the claim for refund filed in January 1996 (treating the delinquently-filed 1986 return also as a claim for refund), the IRS applied § 6511(b)(2)(A) to find that the three-year period from January 1993 through January 1996 was refundable to the taxpayer, and therefore returned $14,151.91 in the form of a transfer/credit to the taxpayer's 1987 tax year.[15]

Next, it reconsidered the December 1993 administrative refund claim pursuant to § 6511(b)(2)(B), and refunded another $11,492.64 plus $6,549.29 in interest, representing the two-year period immediately preceding that claim, to wit, the amount collected between December 3, 1991 and December 3, 1993.

The IRS's total collections from the taxpayer respecting the 1986 taxable year was approximately $60,652.63. At this posture, the total amount refunded/credited to the taxpayer is only $30,641.35. Now, the operative issue is—whether the remaining $30,011.28, which was collected by the IRS between August 31, 1990 and December 2, 1991, falls outside of any allowable refund period pursuant to § 6511. As admitted by plaintiff, and concluded by the U.S. District Court for the Southern District of New York, it does.[16]

To be sure, a plain reading of § 6511(a) clearly delineates the parameters for the timely filing of refund claims which provides for recovery under two prongs *only:* "[i]

---

15. The totality of the amount transferred, $14,151.91, occurred in separate installments whereby the record indicates that $4,996 was credited per the May 1998 Statement of Account, and an additional $9,156 was credited per the IRS transcript of the taxpayer's 1986 account.

(Note: The $4,996 described herein is not the same as the $4,996.80 that was previously applied to the taxpayer's *actual* 1986 tax liability. *See supra* text accompanying note 13).

16. *Johnson,* 1999 WL 493341, at *3.

within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, *or* [ii] if no return was filed by the taxpayer, within 2 years from the time the tax was paid." (emphasis added). When a claim for refund comes under the purview of the first prong, subsection 6511(b)(2)(A) is applied to ascertain the proper amount of recovery. And, systematically, if a refund claim is filed pursuant to the second prong, subsection 6511(b)(2)(B) correspondingly conveys the appropriate recoverable amount.

As explained *supra,* the IRS refunded/credited monies for the benefit of the taxpayer under *both* prongs of § 6511(a) (in correlation with the corresponding subsections for recovery amounts). That is to say, the later of the periods in the first prong— three years from the filing of the delinquent 1986 tax return in January 1996, as well as the two-year period immediately preceding the December 1993 administrative claim in the second prong, have been repaid. Therefore, having returned, refunded, or otherwise credited all said funds pursuant to § 6511(a), subsection 6511(b) indisputably states that: "No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection [6511](a)." Stated differently, plaintiff (*ergo,* the estate of the taxpayer) has fully recovered any and all monies permitted by § 6511(a)—the operative limiting statute for refund claims.

Plaintiff here at bar, like the respondents in *Federal Crop,* is arguing effectual reliance upon the representations made by a government agent, rather than a lawful entitlement pursuant to the tax code. And again, in the case before us, just as in *Federal Crop,* the government agent, although having the apparent authority to enter into agreements (on behalf of the government), exceeded the

scope of that authority when he ostensibly granted approval for the refund of monies when some portion of said refund was clearly time-barred as a matter of law pursuant to § 6511.

Plaintiff would have this court to find that the ordinary authority given to the associate chief operates to transcend all relevant laws and regulations insofar as making determinations regarding tax refund claims. No law, however, brought to our attention, supports plaintiff's assertion.

Instead, we must follow the Federal Circuit's holding in *Total Medical Management, Inc. v. United States* [17] that the government "is not bound by its agents acting beyond their authority and contrary to regulation." [18] There, an agent for the Army (having the authority to contract) entered into memoranda of understanding (MOUs) with the plaintiff to provide medical services to civilian dependents of members of the uniformed services. According to the payment terms of the agreements, the Army was to reimburse plaintiff at a *higher rate* than was permitted by the applicable regulations controlling said form of reimbursements. The Federal Circuit found that the MOUs were "plainly illegal," and therefore "void *ab initio.*" [19] Hence, the plaintiff in *Total Medical* could not recover amounts in excess of that permissible by law.

Unquestionably, the facts in *Total Medical, supra,* are analogous to those in the case at bar. Assuming *arguendo* that an implied contract could result from the IRS Form letter, the government cannot be "bound by its agents acting beyond their authority and contrary to [law]." It is clear that the IRS based its decision to allow the refund claim on the equitable tolling doctrine, that is,

17. 104 F.3d 1314 (Fed.Cir.1997).

18. *Id.* at 1321 (citing *Urban Data Sys., Inc. v. United States,* 699 F.2d 1147, 1153 (Fed.Cir. 1983) (quoting *Yosemite Park & Curry Co. v. United States,* 217 Ct.Cl. 360, 582 F.2d 552, 558 (1978))); *see also Commissioners of Sinking Fund of Logan County v. United States,* 169 U.S. 255, 257–58, 33 Ct.Cl. 505, 18 S.Ct. 361, 42 L.Ed. 737 (1898) (stating that "[T]he act of the Commissioner of Internal Revenue and the Secretary of

the Treasury in approving the claim may be assumed to be *prima facie* evidence that the amount so approved by them was due the claimant from the Government, and the burden therefore rest[s] upon the Government of showing that the allowance of the amount claimed in this proceeding was made through a mistake on the part of those officials.").

19. *Total Medical,* 104 F.3d at 1321.

§ 6511(h) [20] of the tax code. It is also clear that that law was non-existent at the time of the November 1997 decision wherein the associate chief appeals officer advised plaintiff that the "claim has been allowed in full." Moreover, when § 6511(h) became law in July 1998, it was effective prospectively and clearly *not* retroactively. Prior to the enactment of § 6511(h), the law was abundantly clear—"Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations." *United States v. Brockamp*, 519 U.S. 347, 354, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).

Plaintiff insists that the weight of a combination of facts, that is, (1) the language of the November 6, 1997 IRS letter stating that the "claim has been allowed in full," (2) the associate chief's binding authority, (3) the IRS's mission to settle claims without litigation, and (4) the President's charge to Congress to create legislation permitting equitable tolling in the tax code, all coalesce to entitle plaintiff to recovery under the theory espoused herein. We find that they do not.

This court recognizes that the forfeiture of roughly $30,000 is a harsh result on these facts, just as the *Federal Crop* Court acknowledged that "innocent ignorance" of governing regulations can produce hardship. But the obligation of courts goes beyond the hopes and/or disappointments of individual litigants—courts must uphold the law consistent with the intent of Congress.

The U.S. Supreme Court, in *Office of Personnel Management v. Richmond*, 496 U.S. 414, 428, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), held steadfastly that an agency's unauthorized statements to citizens cannot obligate the Treasury for the payment of funds. Such principle "assure[s] that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of Government agents or the individual pleas of litigants." *Id.* Therefore, a "duty [is imposed upon] all courts to observe the conditions defined by Congress for charging the public treasury." *Federal Crop*, 332 U.S. at 385, 68 S.Ct. 1.

Given the foregoing line of decisions, the IRS form letter, if it can be construed as an implied-in-fact contract, is undoubtedly "plainly illegal," and thus, void *ab initio*.[21] Therefore, on the asserted contract theory of recovery, the court is constrained to dismiss this action for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6).[22] Although the plaintiffs in *Total Medical* were entitled to some recovery (as prescribed by law), here at bar, plaintiff has already received that portion of its total initial claim that the law allows, and the only portion before this court is that which is time-barred, *ergo*, "plainly illegal."

Since the subject matter of plaintiff's contract claim is unlawful, *i.e.*, a refund of tax payments collected during a period outside of the operative statute of limitations, a valid enforceable contract. *could not* be formed. Therefore, any further analysis of the remaining elements of contract formation becomes moot, thus, we hold that no implied-in-fact contract exists.

*Account Stated*

Alternatively, plaintiff argues that IRS Form Letter 913(RO) is an "account stated." Unlike the formal elements of a common law contract, an account stated only requires that "the Government must have agreed with the taxpayer that he has overpaid his taxes in a definite amount, and must have communicated to him its intention to repay." *West Publ'g Co. Employees' Preferred Stock Ass'n v. United States*, 198 Ct.

---

20. Enacted July 22, 1998.

21. The letter itself is merely a non-binding notice of the government's willingness to allow plaintiff's full claim subject to mandatory statutory limits. *See Yosemite Park & Curry Co.*, 582 F.2d at 560 (standing for the proposition that the government is entitled to correct its own error).

22. "[T]he law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven. *Spruill v. Merit Sys. Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir.1992); *Gould, Inc. v. United States*, 67 F.3d 925, 929 (Fed.Cir.1995). There is no question that [plaintiff] pleaded the existence of a valid contract here. The proper question ... is one of the merits: whether [plaintiff] failed to state a claim upon which relief can be granted." *Total Medical*, 104 F.3d at 1319.

Cl. 668, 675, 1972 WL 20800 (1972). *See also Shipley Constr. & Supply Co. v. United States,* 79 Ct.Cl. 736, 7 F.Supp. 492, 495–96 (1934) ("[W]here a fixed sum is admitted by one party to be due the other, and there is a promise express or implied for the payment of this amount, an account stated is rendered.").

▮ Notwithstanding the apparent less formal strictures for establishing an account stated, we need not decide whether IRS Form Letter 913(RO) can be so construed. Indeed plaintiff's alternative recovery theory is one of form over substance inasmuch as any recovery thereupon is still irrefutably subject to § 6511. Hence, the same analysis *supra* applies to this recovery theory as well. The Court of Claims, our predecessor court, has long ruled on the matter of an account stated and the threshold affect of statutory refund claim limitations:

> "Conceding arguendo that the certificate of overpayment constituted an account stated in favor of the plaintiff, it is nevertheless governed by statutory provisions. As was said in *Goodenough v. United States,* 19 F.Supp. 254, 85 Ct.Cl. 258, 299 [1937], an account stated gives rise to an implied promise to pay the indebtedness set forth, but 'recovery on this implied promise may be barred by lapse of time' and it may also be barred by an express statutory provision . . . ."

*Carver v. United States,* 27 F.Supp. at 615. *See also Blue Jay Lumber Co. v. United States,* 89 Ct.Cl. 66, 27 F.Supp. 707 (1939) (Although an account stated can be found, damages are still limited by operative refund claim statute.); *Marshall v. United States,* 88 Ct.Cl. 393, 26 F.Supp. 474, 479 (1939).[23]

Plaintiff in *Carver* petitioned that court to cause the defendant IRS to issue a $3,814.27 refund of overpaid taxes respecting his 1917 tax year. In 1928, by order and later by certificate of over-assessment, the Board of

Tax Appeals agreed that plaintiff had overpaid his taxes for 1917. But the *Carver* court nevertheless upheld the defendant's position that plaintiff's claim for refund had not been timely filed. Plaintiff there contended that his claim was brought within six years of the decision by the Board of Tax Appeals pursuant to that court's subject matter jurisdiction. The Court of Claims ruled that "the right to sue for the overpayment in such cases depends upon section 284(e) of the act of 1926, as amended,[the operative statute of limitations predating § 6511], being the provision heretofore set out, and that it is governed thereby 'and not by the provision of section 156 of the Judicial Code (28 U.S.C.A. § 262) as for suits upon claims against the United States.'" *Id.* at 614 (citing *National Fire Ins. Co. v. United States,* 72 Ct.Cl. 663, 669, 52 F.2d 1011, 1013 (1931)).

The *Carver* court made it clear that it is not enough to merely bring a contract claim within the court's six-year jurisdictional statute of limitations when the subject matter of the alleged contract, to wit, a tax refund, is also subject to a separate and overriding time-limiting statute for recovery, *i.e.,* § 6511. Undoubtedly, the right to bring such a *two-fold* claim is a contingent one–

> "[W]here the Board of Tax Appeals determines an overpayment and no question of credits is involved, and *the refund of the overpayment was not barred by the statute of limitations at the time of the decision of the board,* suit might be brought within six years from the date of the board's decision."

*Carver,* 27 F.Supp. at 614 (citing *Ohio Steel Foundry Co. v. United States*[24] and *James v. United States*[25]) (emphasis added).

Of the three (3) conditions-precedent enumerated by the *Carver* court for raising a sustainable cause of action based upon an alleged account stated, both the *Carver* plaintiff and the plaintiff before us only satisfied

---

**23.** "[T]he Commissioner erred in his construction of the California statute and he was equally unfortunate in giving the reasons for his final conclusion. *But this does not affect the determination of the case which must be decided in accordance with legal principles . . . . The Commissioner was not bound to adhere to his original ruling if he subsequently found it was not in*

*accordance with the law as applied to the facts in the case."* (Emphasis added).

**24.** 69 Ct.Cl. 158, 38 F.2d 144 (1930).

**25.** 69 Ct.Cl. 215, 38 F.2d 140 (1930).

the first two—that (i) the IRS determined that there was an overpayment and (ii) there was no issue of credits. Each plaintiff, however, failed to meet the third (and perhaps dispositive) condition—that "the refund of the overpayment was not barred by the statute of limitations [of the tax code] at the time of the decision of the board." *Id.* The facts in both cases are identical on this point. That is to say, at the time of the Board decision in *Carver* and the Appeals Division decision in the case at bar, the operative statutory time period for bringing a refund claim for the proclaimed overpayment had run.

Unquestionably, in November 1997 when Associate Chief Kahn made the decision to ostensibly allow the claim in full, a portion of that claim, which is presently at issue, $30,000, was in fact time-barred pursuant to § 6511. Our analysis of the claims provisions of § 6511(a), *supra*, revealed that only two prongs for recovery are possible thereunder: (i) 3 years from the time a return was filed or (ii) if no return was filed, 2 years from the time the tax was paid. It is undisputed that the IRS previously refunded monies under the first prong for the period of January 1993 to January 1996 ($14,151.91), and the second prong for the period of December 3, 1991 to December 3, 1993 ($11,-492.64). Hence, the $30,000 collected between August 31, 1990 and December 2, 1991, clearly falls outside of any reachable refund claim period, leaving no available recovery to plaintiff, and heretofore rendering untenable plaintiff's account stated theory.

*Equitable Tolling*

We have now twice come full-circle in examining plaintiff's contract recovery theories only to arrive each time at § 6511, which further illuminates plaintiff's reason for urging this court to apply the equitable tolling doctrine. In so doing, plaintiff in effect is arguing that we should apply *pending* legislation in favor of plaintiff, to wit, the then

impending promulgation of § 6511(h), and find that such was a viable basis for the Associate Chief's November 1997 decision. We decline. Pending legislation is not law. Perhaps it can be useful where there is no current law, but that is not the case here at bar where a current statute existed, *i.e.*, § 6511 (absent subsection (h)), and the *Brockamp* decision was good law.

Plaintiff contends that the law was in flux. We disagree. The law was clear, and "th[is] court must decide [cases before it] according to [relevant and] existing laws [at the time the claim first accrued]." *United States v. Schooner Peggy*, 1 Cranch 103, 5 U.S. 103, 110, 2 L.Ed. 49 (1801). Undeniably, Congress was in the process of making new law, which, by intent of Congress, was *not* to have retroactive effect.[26]

Plaintiff posits that "[t]he *Brockamp* decision is not to be interpreted to undermine government procedures and settlement authority." Pl. motion at 6. This perplexing argument by plaintiff—that the legal basis for the decision reached by the associate chief is somehow insulated from legitimate scrutiny—strains credulity. The Appeals Case Memorandum of November 6, 1997 (which was prepared by the appeals officer and approved by the associate chief) read in pertinent part:

"In *Irwin v. [Dept. of] Veterans Admin.[Affairs]*, 498 U.S. 89, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), the Supreme Court held that the same equitable tolling principles applicable to suits between private parties should also apply to suits against the government, and provided a basis for the findings in the previously cited cases.

\*     \*     \*     \*     \*     \*

It is logical to assume that a demonstrated physical incompetency may also be a basis for tolling of the statute of limitations, especially when such physical incompeten-

---

**26.** *See* Historical and Statutory Notes for 26 U.S.C. § 6511(h)–

"Effective and Applicability Provisions: 1998 Acts. Section 3202(b) of Pub.L. 105–206 provides: 'The amendment made by subsection (a) [amending this section] shall apply to periods of disability before, on, or after the date of

the enactment of this Act [July 22, 1998] but shall not apply to any claim for credit or refund which (without regard to such amendment) is barred by the operation of any law or rule of law (including res judicata) as of the date of the enactment of this Act [July 22, 1998].' "

cy results in death, as occurred in the case at issue. Therefore, issuance of the previously determined refund is recommended." Def. Cross-motion at 20.

Fundamentally, the associate chief's reliance upon *Irwin* must fail because it was not current law at the time of his decision. Rather *Brockamp* was the *law of the land. Brockamp* unequivocally addressed equitable tolling in the context of the operative tax statute and "conclude[d] that Congress did not intend the 'equitable tolling' doctrine to apply to § 6511's time limitations." [27] Plaintiff, for obvious reasons, would have us embrace *Irwin*, an inapposite U.S. Supreme Court decision, and arbitrarily reject *Brockamp*, a case on all fours. We must decline.

Plaintiff further relies on *Bonwit Teller & Co. v. United States* [28] for the assertion that "[n]o statute provides for review of the Commissioner's determinations in favor of taxpayers when made within the scope of his authority. Such rulings are entitled to much weight." Pl. motion at 6. By placing more emphasis on the latter statement that "such rulings are entitled much weight," plaintiff all but ignores the pivotal former clause "within the scope of his authority." As we have thoroughly discussed *supra*, the associate chief was not operating within the scope of his authority when he proposed to allow "in full" plaintiff's refund claim in contravention to § 6511—the operative statute. For that reason, the *Bonwit* case is ineffectual to resuscitate plaintiff's failed contract claim.

CONCLUSION

Based upon all of the foregoing, plaintiff's motion for summary judgment is hereby DENIED, and the contract cause of action is dismissed for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6); and defendant's cross-motion for summary judgment is hereby GRANTED. No costs. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

---

**27.** 519 U.S. 347, 354, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997).

**28.** 283 U.S. 258, 264, 51 S.Ct. 395, 75 L.Ed. 1018 (1931).